STATE ex rel. RUMSEY v. JACKSON et ux.
(No. 6230.)

(Court of Civil Appeals of Texas. San Antonio. May 22, 1919.)

1. HABEAS CORPUS ⚖️=99(3) — CUSTODY OF INFANT CHILDREN—WELFARE OF CHILDREN.

The welfare and happiness of infant children is the controlling factor in determining their custody.

2. HABEAS CORPUS ⚖️=99(4) — CUSTODY OF INFANT CHILDREN—IMPROVIDENT FATHER.

Father, who had no home, was thriftless and improvident, whose income was small and uncertain, who had been cruel to infant daughters and mother, and who had no one to care for daughters, was not entitled to their custody following death of mother, to whom the daughters had been awarded by divorce decree, as against maternal grandparents, who had supported them practically all their lives, had adopted them, had a good home, and were well able to support them.

3. HABEAS CORPUS ⚖️=99(3) — CUSTODY OF INFANT CHILDREN — RIGHTS OF FATHER — WELFARE OF CHILDREN.

Law and best interests of society demand that natural rights of father to custody of his children be made subservient to interest and welfare of children.

4. HABEAS CORPUS ⚖️=85(1) — CUSTODY OF INFANT CHILDREN—PRESUMPTION.

In father's habeas corpus proceedings to secure custody of children, whom he has never supported, and to whom he has been cruel, it will not be presumed that the best interests of the children will be subserved by placing them in father's custody.

5. HABEAS CORPUS ⚖️=85(1) — CUSTODY OF INFANT CHILDREN—EVIDENCE.

In father's habeas corpus proceeding to procure custody of children from maternal grandparents, in whose care children had been placed upon mother's death, following her divorce from father, evidence of the adoption of the children by the grandparents was admissible.

6. TRIAL ⚖️=255(7) — INSTRUCTIONS—NECESSITY FOR REQUEST.

In father's habeas corpus proceeding to procure custody of children from maternal grandparents, who had adopted the children upon the mother's death, father should have requested instruction that adoption of children did not confer the right of custody, if he had desired such instruction.

Appeal from District Court, Bexar County; J. T. Sluder, Judge.

Application by the State of Texas, on the relation of A. T. Rumsey, for writ of habeas corpus against W. F. Jackson and wife. Writ denied, and relator appeals. Affirmed.

Chambers & Watson, Mauerman & Hair, and John H. Ragsdale, all of San Antonio, for appellant.

O. M. Fitzhugh and McCollum Burnett, both of San Antonio, for appellees.

FLY, C. J. This is an action to secure the custody of two girls, respectively 6 and 8 years old, through a writ of habeas corpus, instituted by A. T. Rumsey against the appellees, W. F. Jackson and Elizabeth Jackson; appellant being the father and appellees the grandparents of the two children. The cause was submitted to a jury upon a single issue, and upon the answer thereto judgment was rendered that the writ of habeas corpus be denied, and that the care, custody, and control of the two children, Manilla Rumsey and Frankie Rumsey, be awarded to appellees, and permission granted appellant to visit the children at all reasonable hours.

The evidence showed that appellant and Emma Dell Jackson were married on January 31, 1908, and from the union were born Manilla Rumsey, about 8 years of age, and Frankie Rumsey, about 5 or 6 years of age; that the grandparents had cared and provided for the children and their mother a large part of the time that she lived with their father. After the marriage, appellant, who was a school-teacher, taught at Beasley, Wharton county, then at El Campo, then at Yorktown, then in Comanche county, then in Brooks county, then in Freestone county, then he worked in a coal mine, then taught school in Pearsall, then ran a shoe shop at Dilley, then taught at Somerset, then at Bulverde and in Bandera county, and then went to Willow City and taught there. All this was done in a period of 8 or 9 years. A part

---

⚖️=For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

of the time appellant did nothing, and according to his own account never made over $525 or $550 a year. He seemed to be a chronic wanderer, shifting from job to job. His wife, after living with him for about 6 years, abandoned him and obtained a divorce from him. She afterwards married· again, and in the early part of 1918 died. There was evidence tending to show brutal treatment of his wife and children, and that several times he struck his wife, once with a stick of wood. While living with his wife, they stayed a portion of the time with appellees. It was testified that he would not work and did not support his family.. In the divorce proceedings, custody of the children was awarded to the mother, and appellees cared for and maintained them. He made no effort to obtain custody of the children until after the death of their mother, and contributed, probably, $25 to their support after the separation, which occurred about 1915. After the death of the mother of the children, they were legally adopted by the appellees. It was admitted that appellees are first-class people, and that the children are being educated, well trained, and taken good care of by appellees. Both are going to school, are well treated, are contented and happy, and are receiving moral, Christian training, and are being educated in the public schools. Appellees have a home in the city of San Antonio, and over 100 acres of land in the country, and are well able to support and maintain the children. Appellant has no home, and is thriftless and improvident. Custody of the children was given by the mother to appellees, and they were asked to adopt them. The children have been with their grandparents practically all of their lives; the youngest having been fed from a bottle by them from her early infancy. They have been supported practically all of their lives by their grandparents.

[1-3] The only claim to custody of the girls shown by appellant was the fact that he was their father. He had not supported them, nor exhibited any great amount of affection. He is shiftless, and his income is small and uncertain. He has no home, and, judging of his future by his past, never will have. He has no one to whom the care and instruction of his children can be· intrusted. He showed no tenable reason for removing the girls from a Christian home, where they are being tenderly cared for, to a wandering life with their improvident father. The welfare and happiness of the children must be the controlling factors in determining their custody. Applying that rule to the facts of this case, the judgment of the court is eminently just and proper. If, as stated in the case of State v. Deaton, 93 Tex. 243, 54 S. W. 901, the burden rested on appellees of showing that the best interests of the children will be sub-

served by the custody of them being given to their grandparents, the rule has fully met, and there can be no doubt that the moral, mental, and physical welfare of the children will be conserved and guarded by allowing them to remain where they are. There was but one issue in the case, that of the best interest of the girls, and that was submitted by the court to the jury. The natural rights of the father to the custody of his offspring, were made subservient to the interest and welfare of the children, as law and the best interests of society demand that it should be.

This case is even stronger in its facts in ·favor of the grandparents than were those in favor of the foster parents in Legate v. Legate, 87 Tex. 248, 28 S. W. 281, which has set the precedent for cases of this character since its rendition. In that case, both father and mother sought the custody of their 2 year old daughter, and showed that they were in every way qualified to take care of the child, and had a home in which to place it; but the court gave the custody to the foster parents. The court said:

"Two homes are thus offered the child, who is in no wise responsible for this unfortunate controversy, and has not sufficient discretion to select. We hold, as a matter of law, that it is entitled to the benefit of that home and environments which will probably best promote the interest of the infant. The question as to whose custody will be most beneficial to the infant is one of fact, of which this court has no jurisdiction, but which is to be determined in the first instance by the district court, upon hearing all the evidence tending to shed any light upon these two homes and the people inhabiting them, including their entire connection with, affection for, and present and future ability to care and provide for this little child, in order that the court may be able to determine upon the whole case the difficult question of fact above stated."

That case has been followed in a number of instances. In the case of Peese v. Gellerman, 51 Tex. Civ. App. 39, 110 S. W. 196, this court approved and followed the Legate Case and held:

"After the child has become thoroughly fitted into its surroundings, and is attached to its foster parents, and has become endeared to them, it might be the refinement of cruelty to break up the tender relations and destroy happy associations, merely to carry out a sentimental theory about the brutality of disturbing the strongest, purest, and holiest love of a father for his daughter. It may be true, generally, that the father should have control of his child; but at times it is a delusion and a snare, and the law looks to the facts of each case, and looks to the peace, comfort, and happiness of the child, rather than to indulging in fancied theories about every father loving his child, and, regardless of circumstances, entitled to its custody."

In the case of Schneider v. Schwabe, 143 S. W. 265, this court held:

"There is no presumption that the promptings of parental affection will cause a father to tenderly care for his child in the future, when he has failed to so act in the past."

Again it said:

"While recognizing the natural right that parents have to the custody of their children, the children have rights that are higher and of more importance to state and society than the naked right of parents to their custody; and, if their interests can be better conserved by leaving or placing them in charge of some one who can better protect them from the evils that threaten the lives and destinies of the young, the state has the authority, and it is its bounden duty, to place them in that custody. No sentimentality should attend a proceeding of this character, but the permanent interest and welfare of the child should be the great aim and end to be attained."

That is the established doctrine of the courts of Texas, as well as other enlightened courts.

[4] Under the facts of this case the law did not presume that the best interests of the children would be subserved by placing them in the custody of a father, who had never supported them and who had been cruel and unkind to them. If there existed any such presumption, the uncontroverted facts completely destroyed it, and the court properly refused the charge requested as to such presumption. The claim that the moral fitness of appellant was the sole issue is untenable. He may have been morally fitted to have the custody of his children, and yet the welfare of the children might offer an insuperable barrier to his custody of them.

[5, 6] The sixth · assignment of error is overruled. It was not improper to admit the evidence of adoption of the children by appellees, because it was a circumstance to show that they had a permanent home and would stand in the same relation as children of the body, so far as property rights were concerned. If appellant desired to have the jury instructed that the adoption of the children did not confer the right of custody, he should have requested such instruction. The only proposition under the assignment urges no objection, other than that adoption did not confer right to custody. No one has stated that it did, but it is a circumstance proper to be admitted. Appellant offers no authority to sustain his attack on the admissibility of the testimony. The three decisions cited by him have no bearing whatever on the only proposition under the assignment of error. There is nothing in the record to indicate that the testimony prejudiced appellant before the jury. Under the facts, independent of the proof of adoption, no other verdict could be maintained, if the welfare of the children is to be considered.

The judgment is affirmed.