American National Insurance Co. v. Fulg-hum (Tex. Civ. App.) 177 S. W. 1008; Nueces Hotel Co. v. Ring (Tex. Civ. App.) 217 S. W. 255; Escue v. Hartley (Tex. Civ. App.) 202 S. W. 159; and Ewalt v. Holmes (Tex. Civ. App.) 165 S. W. 39—involved written contracts somewhat similar to the one under consideration here, and they were held to be such as were meant by the statute.

[2, 3] We have reached the conclusion that the contract in this case is one "ascertaining the sum payable" in contemplation of the statute. The conditions and requirements suggested by appellant's counsel as making the sum payable under the contract uncertain relate more to the question of liability or the time actual liability attaches, rather than to the amount payable, if liability existed. Giving to the statute a liberal interpretation, as we think should be done, it is our opinion that the words "ascertaining the sum payable" have reference to the sum or amount the party executing the obligation may be reasonably expected or required to pay, in view of all the circumstances incident to the matter or business he is contracting about, if by reason of the provision of the contract he becomes at any time liable to pay thereunder; and it is not necessary in a case like the present one that the contract shall itself establish a fixed liability in a definite amount as of a date certain. It is sufficient to come within the meaning of the statute if the contract provides the conditions upon which liablity depends and fixes a measure by which the sum payable can be ascertained with reasonable certainty, in the light of the attending circumstances. We think the statute should be construed as applying to contracts where, in case of liability arising from contingencies occurring after its execution, the obligor is furnished the means or opportunity of acertaining with reasonable certainty the extent of liability or the sum he may be expected to pay. The contract under consideration is of that kind. There is no uncertainty as to the indemnity contracted for. The policy no doubt made adequate provisions by which the insurance company was advised, by such proof as was required by it, of the extent it was called upon to make good its contract of indemnity. The measure of liability is accurately provided by the policy. When once the extent of such liability is established, by the proof required to be submitted under the terms of the policy, or by a judicial determination of that question, the result is exactly the same. Interest would follow as "damages," regardless of the statute, or it follows by reason of the statute. "Interest" is defined by statute to be "compensation allowed by law or fixed by the parties to a contract for the use or forbearance or detention of money." In the present instance, when the full sum payable under the policy was definitely ascertained, by the trial in the justice court, or in the county court (if the required proof had not theretofore been furnished), as long as the same remained unpaid there was a "detention of money," and the statute attached to the obligation the condition that it should bear the legal rate of interest. The company had the right to contest the question of ultimate ability, but such contest did not change the nature of the obligation. It might have defeated all liability, but if it did not, then there is additional equity in the requirement of the statute that interest shall be allowed on the amount payable.

The interest allowed by the judgment was an integral part of the principal obligation by reason of the statute, and was not damages.

We therefore answer to question No. 1 that such interest was interest eo nomine. This makes it unnecessary for us to answer question No. 2.

CURETON, C. J. The opinion of the Commission of Appeals answering certified questions adopted, and ordered certified to the Court of Civil Appeals.

---

## LAWTHER GRAIN CO. v. WINNIFORD.*
### (No. 328—3683.)

(Commission of Appeals of Texas, Section B. March 26, 1923.)

**1. Judgment ⬤143(2)—To set aside default, defendant must show good excuse and meritorious defense.**

In order to set aside a judgment by default, two things must appear: First that defendant has a good excuse for not answering or making his defense on the trial; and, second, that he has a meritorious defense.

**2. Judgment ⬤163—Where issue of fact is made on application to set aside default, trial court has power to pass finally upon issue of excuse for not answering.**

On an application to set aside default judgment, plaintiff is entitled to controvert so much of the motion as seeks to excuse the failure to answer, and where an issue of fact is raised in this regard, the trial court has the power to pass finally upon that issue.

**3. Judgment ⬤139—Grant or refusal of motion to set aside default discretionary.**

If a motion to set aside a judgment by default be filed more than two days after the judgment is entered, and if sufficient excuse be not given for the failure to file an answer, or to file the motion within the time prescribed by law, it is in the discretion of the court to grant or refuse the motion.

---

⬤For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Rehearing denied April 18, 1923.

**4. Judgment ⊕═163—Trial court on motion to set aside default may hear evidence as to merits.**

On a motion to set aside a default made the day following judgment, the court is not precluded from hearing evidence on the merits of the case, so long as he did not rest his decision upon the failure to prove a meritorious defense, even if good excuse for not answering was not required to be shown.

**5. Appeal and error ⊕═1054(1)—Judgment not set aside for reception of improper evidence in trial by court, unless decision affected thereby.**

The judgment of the trial court should not be disturbed on appeal, unless there be a showing that it is erroneous, and the mere fact that improper evidence was received will not require a reversal, where the trial was to the court, unless the improper evidence affected the decision.

**6. Appeal and error ⊕═1071(6)—Refusal of trial judge to make findings ground for reversal.**

A trial court under Rev. St. art. 2075, may be required by the parties to file findings of fact and conclusions of law, from which it can be determined upon what grounds the judgment was rendered, and its failure so to do upon proper demand is a ground for reversal of the judgment.

**7. Appeal and error ⊕═931(6)—In absence of request for findings of fact and conclusions of law, court presumed not influenced by improper evidence.**

Where no request for findings of fact or conclusions of law was made after issue joined on questions of fact and law, on appeal from an order overruling motion for new trial, it will be presumed that the judge was not influenced by improper evidence, and that he followed the law in overruling the motion.

**8. Appeal and error ⊕═931(4)—Order requiring remission of attorney's fees on overruling default judgment on promissory notes not equivalent to finding that defendant had excuse for not answering.**

Upon an application to reopen a default judgment on promissory notes which included an allowance for attorney fees, the requirement by the trial judge of a remission by plaintiff of the attorney fees in overruling the motion does not warrant the inference that he found that defendant had a good excuse for not answering, where on the hearing of the application the notes were introduced in evidence, and tended to show that there was no promise to pay attorneys fees, and the judge may have been unwilling to permit that portion of the judgment to stand, regardless of whether defendant was remiss in answering.

**9. Judgment ⊕═163—On application to vacate default, where issue joined and testimony taken, court may look to entire testimony to determine if prima facie case is made.**

Where a motion to vacate a default judgment on notes set up a meritorious defense that the notes were without consideration and given for accommodation, and issue was joined,

and defendant testified that they were in fact without consideration, it was proper for the plaintiff to show by cross-examination all the facts within defendant's knowledge, in order to determine whether a prima facie case, which if true would change the result upon a subsequent trial, in fact existed; and, while the court upon hearing could not, over objection, determine a controverted issue of fact as to the merits of the defense, it could look to plaintiff's entire testimony to determine whether, if true, it would present a prima facie case for submission to the jury.

**10. Judgment ⊕═145(4)—Application to vacate default judgment on notes properly denied for want of meritorious defense.**

On an application to vacate a default judgment on notes, where defendant asserted a meritorious defense, in that the notes were without consideration and for accommodation purposes only, and it appeared on the hearing of the application that defendant had defaulted in delivery of quantities of maize at specified prices, resulting in loss to plaintiffs on a rising market, that the parties had an agreed settlement whereby defendant admitted in writing owing the amount of the notes which he agreed to pay, either in money or maize, and that later the notes were executed for the exact amount and in settlement of the indebtedness, the defense of want of consideration was completely negatived, and his motion properly denied.

**11. Evidence ⊕═420(7), 423(9)—Notes absolute on their face cannot be shown to be absolute or not payable in money.**

Where promissory notes were absolute on their face as promises to pay certain sums of money at stipulated times, parol evidence was not competent to show that they were not absolutely payable, or that they were payable by the delivery of maize, or anything other than money.

Error to Court of Civil Appeals of Fifth Supreme Judicial District.

Action by the Lawther Grain Company against J. L. Winniford. The Court of Civil Appeals (232 S. W. 853) reversed an order refusing to set aside a judgment for plaintiff by default, and plaintiff brings error. Judgment of the Court of Civil Appeals reversed, and that of trial court affirmed.

Lawther & Pope, of Dallas, for plaintiff in error.

Geo. C. Edwards, of Dallas, for defendant in error.

McCLENDON, P. J. Joe E. Lawther and others, constituting the copartnership of Lawther Grain Company, brought this suit on February 20, 1920, against J. L. Winniford to recover the amount of two promissory notes dated January 17, 1920, one for $1,527.50 due February 2, 1920, and the other for $2,000, due February 17, 1920, each bearing interest at 8 per cent. per annum from date and calling for attorney's fees; also to recover $926.

96, the amount of a draft. On April 6, 1920, the court entered a default judgment in favor of plaintiff for the full amount of the two notes, with interest and attorney's fees. The judgment did not cover any part of the draft. On April 7, 1920, defendant filed a formal motion to set aside the judgment, and on June 5, 1920, filed a verified amended motion for new trial, alleging as grounds in substance the following: That after the suit was filed defendant paid the draft and made an agreement for adjustment of the notes by which defendant was to thresh and sell certain maize which he owned, and turn over the proceeds to plaintiffs, and the balance owing on the notes was to be secured by deed of trust upon an elevator owned by defendant, and extended; that under this agreement the suit was to be dismissed; that defendant relied upon this agreement, and did not employ counsel or answer, and, while he was endeavoring to carry out the adjustment by getting the maize threshed and procuring an abstract of title to the elevator, the judgment was taken against him. As a defense to the suit he alleged certain negotiations between himself and plaintiffs, in which he had agreed to sell them certain maize which he owned, and which, on account of continued rains, was not in condition to be delivered; that he repeatedly offered to deliver it, but plaintiffs refused to accept it; that about the middle of January, 1920, plaintiffs told defendant they needed to raise some money, and got defendant to execute the notes to be used by plaintiffs for their accommodation to raise money at the bank; and that there was no consideration whatever for the notes.

Plaintiffs filed a sworn answer, controverting this amended motion, which alleged certain sales of maize by defendant to plaintiffs in the fall of 1919; a failure to deliver on defendant's part; a consequent loss to plaintiffs in the sum of $5,527.50; an agreed settlement in writing, showing the amount of this loss; the execution of the two notes in suit, and an additional note for $2,000 to cover this indebtedness; default in payment of the notes at maturity; and the filing of the suit. In response to the allegations of the motion concerning defendant's excuse for not answering in the case, it was alleged that no judgment was taken on the draft; that after the suit was filed it was agreed that if defendant would, before the case was reached for trial, pay off the smaller note, and secure the other by mortgage upon the elevator, the suit would be dismissed, provided the abstract showed good title to the elevator; that plaintiffs never heard anything more from defendant in regard to the matter. We have only stated the substance of the material allegations of the motion and the answer.

Upon the hearing defendant offered himself as a witness in support of the allegations of his motion. In his examination in chief he testified substantially as the motion alleged concerning the agreement to dismiss the case, except that he stated that the smaller note was to be paid in full. He also testified concerning the merits of the case, the substance of which was that he had only sold certain specific maize which he owned; that there were a number of negotiations concerning its delivery, which he detailed; that in December, 1919, plaintiff Joe E. Lawther told him that they had lost about $5,500 on the contract, and matters had to come "to a showdown"; that they expected him to make up this loss.

"I asked him if he would give me that much for my maize, the advance in price, and he said sure he would, that he would go ahead and handle the maize and give me that much if the market didn't decline, and I would not lose anything. I thought that was all right, and we came to an agreement about the amount it would take to make up that difference, about $5,500. We agreed that I would ship my maize, and he would still handle it, and he was going to give me the top of the market, and not confine me to the $1.65, as I agreed to give him the $5,500. It still continued to rain, and we couldn't get the maize in condition to thresh. I would come in and tell him about it, and he would say, 'Don't ship it;' that it wouldn't do to ship it when it was damp. So along in January I was up in his office, and he told me that he was getting short on money, and said he had to do something, and said I would have to give him my note; that we had to settle this thing up. I told him I couldn't pay the note until we threshed the maize; he said, well, he could indorse the notes and get money at the bank. I thought that was all right, so I gave him the notes. Then when the first note was three days past due he sued me. It was still raining; I couldn't thresh the maize. In the meantime I had 34 bales of cotton to burn up, and the maize was the only thing I had from which to get the money, and I never did realize anything for it; it finally spoiled."

He had previously testified that he "did not receive a penny consideration for the $5,527.50 of notes." On cross-examination he admitted the execution of three written instruments, which were introduced in evidence, the first two of which were confirmations of sales to plaintiffs of certain quantities of maize at certain prices. The third was a statement of loss dated December 12, 1919, showing defendant to be owing plaintiffs on these orders the sum of $5,527.50 as "agreed settlement, to be paid in maize if not in cash." Concerning this settlement he testified:

"That memorandum was made in order to establish the price that he paid us. That if it went up any higher or went down, we would know what I was to get. I was to send him maize to the amount of $5,500. He was to allow me $2.30 a hundred for it. On account of my failure to deliver the maize, he said he had sustained that loss, and I was to make it good, then he was to allow me $2.30 for my

maize. I never did ship him any maize after that. In January, 1920, I had not paid any part of the $5,527.50 nor shipped any maize."

Concerning the notes, which were also introduced in evidence, he testified:

"Those notes, two for $2,000 each and one for $1,527.50, were given to cover that amount of $5,527.50. When I gave those notes it was my understanding that I was not losing anything. The amount of the notes is equal to the amount of the settlement, which I was to pay either in money or in maize."

Defendant objected to the introduction of the written instruments, and the notes, as well as to his own testimony on cross-examination, on the ground that such evidence was irrelevant, and that to admit it would in effect be a trial of the alleged defense upon its merits.

We will not notice the testimony offered by plaintiffs further than to say that, as concerns the agreement to dismiss, the only material conflict between it and that of defendant was that plaintiffs' testimony was to the effect that the agreement must be consummated by paying the smaller note, furnishing an abstract showing good title to the elevator, and giving the mortgage before the case was called for trial. The trial court required plaintiffs to remit the attorney's fees, and, upon this being done, overruled the motion generally, without stating upon what grounds. No findings or conclusions were filed by the trial court, and none requested; nor did the bill of exceptions taken to the overruling of the motion state the grounds upon which the court acted. The court of Civil Appeals reversed "the judgment entered," and remanded the cause "for another hearing on the motion." 232 S. W. 853.

[1] In order to set aside a judgment by default two things must appear: First, that the defendant has a good excuse for not answering or making his defense on the trial; and, second, that he has a meritorious defense. Railway v. Kelley, 99 Tex. 87, 87 S. W. 660; Holliday v. Holliday, 72 Tex. 581, 10 S. W. 690; Foster v. Martin, 20 Tex. 118; 30 Century Dig. Judgments, §§ 270, 271; Decennial Dig. Judgments, §§ 142(2), 145(2).

[2] While the motion contained both of these prerequisites, still plaintiffs had the right to controvert, in any event, so much of the motion as sought to excuse the failure to answer, and where an issue of fact was raised in this regard the trial court had the power to pass finally upon that issue. The Court of Civil Appeals so held. We think that court also properly held that:

"If the agreement was that alleged by appellee, then the motion was properly overruled, because, then, appellant failed to excuse his default. If he made the agreement asserted by appellee, he is in the same position as he would have been had he disregarded the suit, and made default without any understanding at all

with appellee, because the binding force of the agreement had ceased by reason of the time limitation, within which he had failed to perform it as required."

[3] The court held, however, that evidence upon the merits of the defense was inadmissible; and that since the trial court heard such evidence, and modified the judgment by requiring a remission of the attorney's fees, and the record did not show upon what ground the motion was overruled, it could not be determined to what extent this improper evidence may have influenced the court. We are unable to concur in this holding. Conceding that the court could not pass upon a conflict of evidence upon the merits of the defense, it was within the power of the court to grant the motion, whether or not such an excuse was presented as would require such action as a matter of law.

"If a motion to set aside a judgment by default be filed more than two days after the judgment was entered, and if sufficient excuse be not given for the failure to file an answer, or to file the motion within the time prescribed by law, it is in the discretion of the court to grant or refuse the motion." Railway v. Kelley, above.

[4] Here the original motion was filed in time, but it was still discretionary with the court to grant it, even if a good excuse for not answering were not shown. We see no reason, therefore, why the court should be altogether precluded from hearing evidence on the merits of the case so long as he did not rest his decision upon the failure to present a meritorious defense.

[5-7] The judgment of the trial court should not be disturbed unless there be a showing that it was erroneous. In accordance with this rule it has been repeatedly held that the mere fact that improper evidence has been adduced will not require the reversal, where the trial was to the court. There must be some showing that the improper evidence affected the decision. Melton v. Cobb, 21 Tex. 544; Behan v. Ghio, 75 Tex. 90, 12 S. W. 996; Moore v. Kennedy, 81 Tex. 147, 16 S. W. 740; Railway v. Startz, 97 Tex. 167, 77 S. W. 1. Under our practice the parties are given the right to require the trial court to file findings of fact and conclusions of law, from which it can be determined upon what grounds the judgment was rendered. R. S. art. 2075. The trial judge's failure so to do, upon proper demand, is a ground for reversal of the judgment. Wandry v. Williams, 103 Tex. 91, 124 S. W. 85. We see no reason why this statute should not apply to an order overruling a motion for new trial, where issue was joined upon questions of fact and law. No effort appears to have been made to have the record show the grounds upon which the court overruled the motion; and, unless we can say from the record that the judge must have been, or in all probabil-

ity was, influenced by improper evidence, it should, we think, be presumed that he followed the law in making his order overruling the motion.

[8] The fact that the trial judge required a remission of the attorney's fees does not, in our opinion, tend to show that he passed favorably upon defendant's contention that there was a good excuse for not answering. Upon the hearing the original notes were introduced in evidence, and they showed upon their face that the blanks in the attorney's fees clauses for insertion of the pronoun representing the maker had been filled by inserting therein the figures 10, so that those clauses read:

"If this note is placed in the hands of an attorney * * * ten agree to pay ten per cent. additional * * * as attorney's fees."

The court evidently took the view that by the face of the notes themselves there was no promise on the part of the maker to pay attorney's fees, and was not willing to permit that portion of the judgment to stand, regardless of whether defendant was remiss in not answering. It does not follow from this action that he found that defendant was not remiss and passed upon the merits of the defense unfavorably to defendant.

For these reasons we do not think the record affirmatively shows prejudicial error. But aside from this we have reached the conclusion that upon the whole record a meritorious defense was not shown. In Holliday v. Holliday, above, the court say:

"When a motion for a new trial is made on the ground that the party making it was not represented at the trial, or if present in person or by attorney on the ground that he had no pleadings filed making the issues on which his rights depended, the rule seems well established in this state that in addition to excusing his absence or failure to plead the party must also show by a sufficiently circumstantial statement that he has a meritorious cause of action or defense. Stating generally that he has a meritorious cause of action or defense is not sufficient. Enough should be stated, supported by affidavit, to show at least a prima facie case. Courts ought not in such cases set aside judgments rendered except upon a showing which if true and unexplained would change the result on a subsequent trial. Cowan v. Williams, 49 Texas, 397; Montgomery v. Carlton, 56 Texas, 431; Contreras v. Haynes, 61 Texas, 105."

[9] The motion itself set up a good defense, in that it alleged that the notes were without consideration, and were executed merely as accommodation paper. Defendant made no objection to the filing or consideration of the answer controverting his allegations of meritorious defense; but, on the contrary, appears to have joined issue with plaintiffs and offered himself as a witness to establish, not only his alleged excuse, but also that the notes were in fact without consideration. Under these circumstances, we

think it was proper to show by cross-examination, all the facts within defendant's knowledge, in order to determine whether a prima facie case, which, if true, would change the result upon a subsequent trial, in fact existed. Upon the hearing of the motion, the court could not, over objection, determine a controverted issue of fact as to the merits of the defense; but we see no reason why, under the procedure adopted by defendant himself, the court could not look to plaintiffs' entire testimony to determine whether or not, if true, it would present a prima facie case for submission to a jury. See Sugg v. Thornton, 73 Tex. 669, 9 S. W. 145.

Where a party moves for a new trial and in support of his right asserts that he can prove a certain fact by a certain witness, and then offers that witness to show what his testimony will be, it would be an extremely narrow and technical rule which would preclude cross-examination of the witness for the purpose of showing by him that he would not testify to the fact which it is alleged his testimony would establish.

[10] Taking defendant's entire testimony as true, and eliminating all the controverting evidence on the question of the consideration for the notes and their binding effect on defendant, it appears that defendant made two contracts with plaintiffs for the sale of certain quantities of maize at certain prices; that he did not deliver the maize; that the price advanced considerably, resulting in loss to plaintiffs; that the parties had an agreed settlement in the matter whereby defendant admitted in writing that he owed plaintiffs the amount of the face of the notes, which was agreed to be paid either in money or maize; and that later the notes were executed for the exact amount and in settlement of his indebtedness. At the time the notes were executed it is clear from the testimony of defendant himself that he owed plaintiffs $5,527.50, which he had the privilege of paying in money or maize, and he executed these notes in settlement of this indebtedness. His verified motion does not even suggest fraud in the execution of the notes, but only claims that they were executed without consideration and as an accommodation to plaintiffs. We think defendant's own testimony negatives this defense. Under the procedure adopted by him his entire testimony may be considered as a part of his motion. We think peculiarly applicable to this case the above-quoted holding that:

"Courts ought not in such cases set aside judgments rendered except upon a showing which, if true and unexplained, would change the result on a subsequent trial."

[11] At most the defendant's own testimony only tends to show that he had the privilege of paying the notes in maize. The notes being absolute upon their face as promises to pay certain sums of money at

stipulated times, it was not competent to show by parol that they were not absolutely payable, or that they were payable in anything other than money. Roundtree v. Gilroy, 57 Tex. 176; Self v. King, 28 Tex. 553; Denman v. Kaplan (Tex. Civ. App.) 205 S. W. 739 (writ refused); 22 C. J. p. 1091, § 1445 (3); Id., p. 1094, § 1448(6); Id. p. 1152, sec. 1542(2)..

We conclude that the judgment of the Court of Civil Appeals should be reversed, and that of the trial court affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.