**JOSEPH v. PURYEAR et ux.  (No. 6843.)**

(Court of Civil Appeals of Texas. Austin. March 18, 1925. On Motion for Rehearing, May 6, 1925. Rehearing Denied May 29, 1925.)

**I. Habeas corpus ⟨⟩90—Submitting to jury issues as to whether parties contending for custody of child were fit persons held not error.**

Although neither under Bill of Rights, art. 1, § 15 (Const. art. 5, § 10), nor statutes, have parties in habeas corpus proceeding right to jury trial, yet question of what was to best interest of child, whose custody was in controversy, was question of fact, and submitting to jury question whether contending parties were fit persons for its custody and control was not error.

**2. Habeas corpus ⟨⟩90—Trial court not bound to accept findings of jury in habeas corpus proceedings.**

As general rule trial court submitting questions in habeas corpus proceedings to jury is not bound to accept findings of jury, but may reject them if he sees fit.

**3. Witnesses ⟨⟩376 — Permitting witness, whose bias plaintiff attempted to show, to explain on cross-examination her conduct in directing plaintiff to leave her premises, held not error.**

In habeas corpus proceedings by father of child against parents of his deceased wife, in which plaintiff contended that his mother-in-law bore him ill will, would teach child to hate him, and was not proper person to have custody and education of child, and by cross-examination endeavored to show animus towards him, her testimony that the reason she told plaintiff to go on when he appeared at her home during illness of his wife was that his wife told her to do so, was proper, even though it called in part for hearsay evidence.

**4. Habeas corpus ⟨⟩85(I)—In effort to show that plaintiff was not proper person to have custody and education of child, defendants held not confined to his general reputation.**

In habeas corpus proceedings by father to gain possession of child, defendants were not confined to plaintiff's general reputation in their efforts to show that he was not proper person to have custody and education of child, but any facts and circumstances indicating fitness or unfitness could be inquired into.

**5. Habeas corpus ⟨⟩85(I)—Testimony that plaintiff, seeking to obtain custody of child, was cruel to his deceased wife, held admissible.**

In habeas corpus proceedings by father to obtain possession of child, testimony that on one occasion he had knocked his deceased wife down, was admissible on issue of his unfitness.

**6. Evidence ⟨⟩474½—Refusal to allow witness to state opinion whether plaintiff, seeking custody of child, was fit to raise child, held not error.**

In habeas corpus proceedings by father to gain custody of child, refusal to allow witness, who admitted that he knew nothing about plaintiff's domestic relations, social life, or morals, to state whether in his opinion plaintiff was fit man to raise child, was not error, especially as such was ultimate issue to be decided by jury.

**7. Habeas corpus ⟨⟩85(I)—Sworn petition for divorce against plaintiff, decree and evidence as to testimony held admissible.**

In habeas corpus proceedings by father for custody of child, sworn petition of his deceased wife in divorce suit alleging cruelty, decree reciting finding of truth of allegations, and evidence that wife testified to same effect as her allegations, held admissible to throw light on character of plaintiff and his fitness to have custody of child, and, even if incompetent, rendered competent by plaintiff's introducing answer in divorce suit charging one of defendants with causing his wife to leave him, and by his taking witness stand and testifying fully concerning entire matter.

**8. Parent and child ⟨⟩2(3)—Welfare of child held paramount to right of father to custody.**

Although father is natural guardian of child and ordinarily is entitled to custody unless unworthy and incompetent, welfare of child is paramount to such right of father.

On Motion for Rehearing.

**9. Habeas corpus ⟨⟩113(12)—Admitting testimony as to dying declaration of wife of plaintiff seeking custody of child held reversible error.**

In habeas corpus proceedings by father for custody of child, admitting statement of plaintiff's deceased wife, shortly before her death, that plaintiff was cause of her death, and that he would treat child in same manner, was reversible error, where judgment indicated that court relied on findings of jury that plaintiff was not fit person to have custody of child.

**10. Appeal and error ⟨⟩931(6)—On failure to require trial court to file findings, if competent evidence supports judgment, it is presumed that court disregarded incompetent evidence.**

In trial before court without jury, if aggrieved party fails to require court to file findings of fact, if there is sufficient competent evidence to support judgment, it will be presumed on appeal that court disregarded incompetent evidence.

Appeal from District Court, Travis County; George Calhoun, Judge.

Habeas corpus proceeding by Joseph L. Joseph for custody of his minor child against J. M. Puryear and wife. From the judgment for defendants, plaintiff appeals. Reversed and remanded on rehearing.

---

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

D. J. Pickle, T. H. McGregor, and A. L. Love, all of Austin, and C. H. Jenkins, of Brownwood, for appellant.

Hart, Patterson & Hart, of Austin, for appellees.

BAUGH, J. This is an appeal from a habeas corpus proceeding instituted by Joseph L. Joseph against J. M. Puryear and wife, Nancy Puryear, to obtain the custody of his three year old daughter, Norraine Elizabeth Joseph. Shortly after obtaining a divorce from the appellant on the grounds of cruel treatment, the mother of the child died, leaving her with her maternal grandparents, appellees herein. At the instance of the appellees, a jury was had and the following issues submitted to them:

(1) "Is the petitioner, Joseph L. Joseph, father of said minor child, a proper person to be intrusted with the rearing, care, and education of said child? Answer this question 'yes' or 'no.' "

To which the jury answered: "No."

(2) "If you answer 'no' to question No. 1, then you will answer this question: 'Are the respondents J. M. Puryear and Nancy Puryear proper persons to be intrusted with the rearing, care, and education of said minor child, and will the best interest of said child be subserved by awarding to the said J. M. Puryear and Nancy Puryear the rearing, care, and education of said child?' "

To which the jury answered: "Yes."

The court thereupon awarded the custody of the child to its grandparents, appellees herein.

·Opinion.

[1] Appellant insists that in a habeas corpus case the issues are triable before the court alone, and that it was error to submit the issues to the jury, citing Pittman v. Byars, 51 Tex. Civ. App. 83, 112 S. W. 102, and Foster v. Foster (Tex. Civ. App.) 230 S. W. 1064. These cases, however, go no further than to hold that the parties have no constitutional right to demand and have a jury trial in habeas corpus proceedings. In the case of Pittman v. Byars, Judge Rice of this court, in a very learned and exhaustive discussion, in which he reviewed at some length the history of habeas corpus proceedings, reached the conclusion that neither under article 1, § 15, Bill of Rights (article 5, § 10, of the Constitution), nor under the statutes governing the right of trial by jury, did the parties have a right to demand a trial by jury in a habeas corpus proceeding to determine the possession and custody of a minor child. We deem it unnecessary to set out and discuss here those constitutional and statutory provisions. Judge Rice's conclusion was based, as stated therein, on the proposition that—

"The constitutional requirement that the right of trial by jury shall remain inviolate does not confer the right where it did not exist before the adoption of the Constitution."

He also concluded that, inasmuch as under the common law and the uniform practice of the courts in England and in the United States such cases were tried before the court both before and since the adoption of the present Constitution, it was not the intention of the framers of that instrument to give litigants such right in habeas corpus proceedings. This case was also followed in Foster v. Foster, supra, in which application for writ of error was granted by the Supreme Court, but which case was subsequently dismissed in that court because the question became moot.

[2] However, in the Pittman Case it is expressly held that, notwithstanding the lack of a constitutional right in the parties to demand a jury trial, "the court or judge sitting on the return to a writ of habeas corpus may, in its discretion, order any controverted fact in the matter to be tried by a jury." See, also, 21 C. J. 585, 588. And the question as to what are the best interests of the child, which is the matter of paramount concern, is a question of fact. Legate v. Legate, 87 Tex. 253, 28 S. W. 281. In the instant case this issue was controverted. The direct question of the right of parties to demand, under the Constitution and the statutes, a trial by jury in a habeas corpus case, seems never to have been expressly passed upon by the Supreme Court. And though this particular point does not appear to have been raised in the cases cited below, the practice of trial courts in submitting controverted issues of fact to a jury in such proceedings appears to have become well recognized by Courts of Civil Appeals. The following cases afford instances of such practice: Cobb v. Works, 58 Tex. Civ. App. 546, 125 S. W. 349; State ex rel. Rumsey v. Jackson (Tex. Civ. App.) 212 S. W. 718; Clayton v. Kerbey (Tex. Civ. App.) 226 S. W. 1119. The general rule also seems to be that, in such cases, the trial court is not bound to accept the findings of the jury, but may reject same if he sees fit. 21 C. J. 594.

[3-5] There was no error in permitting Mrs. Puryear to testify upon cross-examination by appellant's attorneys that the reason she told Joseph L. Joseph to "drive on" or "go on" when he appeared in front of her home during the illness of his wife was that Vida Joseph, his wife, who was there, told her to do so. It was appellant's contention that Mrs. Puryear had caused his wife to leave him and secure a divorce; that she bore him ill will, and would teach his child to hate him, and was therefore not a proper person to have its custody and education. His cross-examination was an effort to show animus on Mrs. Puryear's part towards him. Under such circumstances she was entitled to explain her conduct in directing him to

leave her premises and her reasons therefor that the jury might know whether she was prompted by ill will or hatred towards appellant, even though such explanation called in part for hearsay evidence. Especially was this true since appellant himself had made her alleged dislike for him a material issue in the case. Nor were the respondents confined to the general reputation of appellant in their efforts to show that he was not a proper person to have the custody and education of the child. Any facts or circumstances indicating his fitness or unfitness could be inquired into by the court. The intimate associations of life and conduct within the home which reflect the character of the individual, or disclose his probable influence upon the life of a baby girl, are very often not reflected by his general reputation. A single instance of misconduct, of weakness, of cruelty, or of abuse may reflect a truer index to a man's fitness to rear a baby girl than his general reputation could possibly do. There was no error, therefore, in permitting Jeff Puryear to testify that on one occasion in the rear of Joseph's store he had pushed the curtains aside, and had seen appellant knock his wife down, and heard him curse her. Appellee insists, however, that this could only show his attitude towards his wife, which was not an issue, and not that he did not love his child. There is no merit in this. His attitude towards, and his conduct towards and in the presence of, his wife, evidenced the true character of the man and furnished the court and the jury a true criterion in determining his fitness to have the custody and education of the child, and whether she would be surrounded by the proper influences.

Appellant urges as grounds for reversal the error of the trial court in permitting Dewey Puryear, brother of appellant's deceased wife, to testify that her last statement to him was as follows:

"'I am going to die; I am going to die; Joe is the cause of it all. I have gone through something awful during this sickness, but it is not half of what I have gone through with while living with him. Don't let him take the baby. He will do the baby the same as he has me. You see what suffering I have gone through and it is not half of what I have gone through. He has beat me; he has cursed me and abused me; don't let him have the baby. If he gets the baby, it will be done the same way.' After she made that statement to me I asked her what caused her condition. She said she was forced against her will into what she had done. She did not say what she was forced into. She said Joe had forced her."

This testimony is clearly hearsay and in effect a dying declaration, whether offered as such or not. We think it was inadmissible and incompetent. So far as it relates to the cause of Mrs. Joseph's death, however, the error is harmless. Other evidence, introduced by both parties and without objection, showed that appellant's wife had been divorced from him for over a year; that on the night before her illness began appellant had been out in the country with her in a car until after 11 o'clock; that on the following day her illness began and after 17 days resulted in her death; that the illness and death resulted from poisoning occasioned by placing in her vaginal passages bichloride of mercury tablets; that such tablets are used after intercourse to prevent conception.

Though the record does not disclose the question or questions asked in reply to which said testimony was given, the bill of exceptions indicates that the question asked was what the deceased woman said was the cause of her illness. If that is correct, most of the testimony above quoted was not responsive to the question. And it does not appear that the answer was excepted to or that any request was made to exclude the unresponsive portion of the answer. However, the unresponsive portion was incompetent and inadmissible; but we do not think its admission constitutes reversible error. The effect it may have had on the jury does not require a reversal. The findings of the jury were not necessarily binding on the court. He could have, had he seen fit, rejected their findings, and awarded the custody of the child to appellant, had he concluded from all the evidence that their findings were wrong, and that the best interests of the child so demanded. In addition to the findings of the jury, the court himself found, as stated in his judgment, that their findings accorded with his own; that is, that appellant was not a fit person to have the custody and control of such minor child. And whether such incompetent testimony influenced the jury or not, if there was sufficient competent evidence to support the court's finding, it will be presumed in the absence of a showing to the contrary that the incompetent evidence was not considered. Mallow v. Raynes (Tex. Civ. App.) 188 S. W. 23; Kingsville Cotton Oil Co. v. Dallas Waste Mills (Tex. Civ. App.) 210 S. W. 832; Magee v. Paul (Tex. Civ. App.) 224 S. W. 1118; Ins. Co. v. Kelly (Tex. Civ. App.) 237 S. W. 577; Lawther Grain Co. v. Winniford (Tex. Com. App.) 249 S. W. 195, and authorities there cited. This also applies with equal force to the testimony of Mrs. Emma Lipscomb as to what Mrs. Joseph said just before she died.

[6] There was no error in the court's refusal to allow the witness A. J. Zilker to state whether in his opinion appellant was a fit man to raise his own child. Whether he was or not was the ultimate issue to be decided by the jury. Nor was it shown that Zilker knew anything about the appellant's domestic relations, his social life, his morals, or other matters requisite to creating a

proper environment for his little girl. On the contrary, he admitted on cross-examination that he did not. His testimony was that appellant's general reputation as to being a hard working, industrious, law-abiding boy was good. Clearly he was not qualified to answer the question propounded.

This brings us to the contention made by appellant in his last two propositions, which are, in effect, that the findings of the jury and the court are not supported by the evidence, but contrary to the great preponderance of the competent evidence. No good purpose could be served here by setting out or summarizing this evidence. We think it was sufficient to sustain the judgment of the court.

[7] Relators introduced without objection the sworn petition of Mrs. Joseph in her divorce suit against appellant, which set forth general allegations of cruelty, abuse, profanity, etc., and specific instances, giving dates, places, etc., as well. They also introduced the court's decree, which recited that the substantial allegations of said petition were found to be true. Witnesses also testified that appellant with his counsel was present at the trial of the divorce proceeding; that he cross-examined Mrs. Joseph; and that she testified to the specific allegations of her petition. None of this testimony was objected to. As throwing light upon the character of appellant and his fitness to have the custody of the child, this was admissible. See Hill v. Lofton (Tex. Civ. App.) 165 S. W. 67; Gaslight Co. v. Anderson (Tex. Civ. App.) 262 S. W. 136. But, even if incompetent originally, it was rendered competent when appellant introduced his answer to the divorce petition, setting up an affirmative defense, charging one of the appellees, Mrs. Puryear, with causing his wife to leave him, and by taking the witness stand himself and testifying fully about the entire matter.

[8] The law is well settled that—

"The father is the natural guardian of the child, and ordinarily is entitled to its custody, unless it is manifest to the court that the father is unworthy or incompetent to discharge the obligation." Smith v. Long (Tex. Civ. App.) 181 S. W. 479; Wood v. Deaton, 93 Tex. 243, 54 S. W. 901; Carter v. Lambert (Tex. Civ. App.) 214 S. W. 566; Clayton v. Kerbey (Tex. Civ. App.) 226 S. W. 1118.

But it is equally well settled that the welfare of the child is of paramount concern, and as succinctly and forcefully stated by Justice Neill in White v. Richeson (Tex. Civ. App.) 94 S. W. 202:

"An issue [of what is best for the child] involves and requires inquiry into the moral, social, and financial character and standing of the parties—their environments, habits, and disposition of heart and mind. For all these must be weighed in order to determine the best interest of the child. And, when weighed

273 S.W.—62

in the balance, the party found wanting in conditions, qualities, and characteristics conducive to the interests of the child, which are found in the scales to be of greater weight in favor of the other, that party in whose favor the weight is greatest should have the custody."

The court and the jury had all the parties personally before them with opportunity to observe their demeanor, their conduct, their attitude, and their dispositions, all of which factors, in addition to the testimony, they were entitled to take into consideration in determining what was best for the future of the child. Having decided the issue adversely to appellant, we will not disturb the trial court's determination.

Finding no error in the record of sufficient gravity to require a reversal, the judgment of the trial court is affirmed.

Affirmed.

### On Motion for Rehearing.

Appellant's counsel has filed a very able and exhaustive motion for rehearing, and has convinced us that we reached the wrong conclusion in affirming the case originally.

[9] If the verdict of the jury were binding on the court, there can be no doubt but that the improper testimony of Dewey Puryear and of Mrs. Emma Lipscomb as to the dying declarations of Mrs. Joseph would require a reversal of the case. Their findings were based, in part at least, upon inadmissible testimony. We do not recede from our former conclusion, however, that the court was not necessarily bound by the jury's finding of fact. Clearly, we think, he could have rejected their findings in toto, had he seen fit, and could have reached an independent verdict contrary to what the jury found. In his judgment he recited an independent finding, stating that it accorded with the findings of the jury. Counsel calls our attention to the language in the decree, however, which leads us to believe that, even if the court did not accept the findings of fact made by the jury and adopt same as his own, he was strongly influenced thereby in reaching the conclusion he did reach. The language of the decree referred to is as follows:

"The defendants filed in this court their motion that the court receive and accept the answers of the jury to said special issues as determinant of the facts relating to the material issues involved in this cause. * * * The court granted the said motion so made by the said defendants J. M. Puryear and Nancy Puryear, and accepted the answers and verdict of the jury * * * as determinant of the facts of this case, and, in accordance therewith and with the judgment of this court, it is further ordered, adjudged and decreed, etc."

[10] In trials before the court without a jury, the aggrieved party can require the court to file his findings of fact and ascertain whether the court considered incompe-

tent evidence in arriving at his verdict. Failing to do so, the rule is well established that if there is sufficient competent evidence to support his judgment, it will be presumed that the court disregarded the incompetent evidence. Such is the rule of practice. Railway Co. v. Startz, 97 Tex. 171, 77 S. W. 1. Numerous authorities on this point are set out in volume 2, S. W. Rep. Digest, at page 1565. In the instant case no request was made for findings of fact and conclusions of law. We are not prepared to say, however, that the trial of the facts to a jury did not induce the failure to request such findings, and since the court had already overruled appellant's objection to the presence of the jury in the case, he may have reasonably concluded that he was not entitled to have independent findings of fact made by the court. However that may be, the language used by the court in his judgment, indicating that he accepted and adopted the findings of the jury which were arrived at with improper evidence before them, and which in a jury trial would require a reversal and the fact that he admitted the improper and damaging testimony to the jury as competent, we think is sufficient to overcome the presumption, otherwise obtaining, that the court did not himself consider the improper testimony in arriving at his verdict. On the other hand, it rather indicates, we think, that he did consider it. If the court did consider the objectionable testimony in arriving at his verdict, the error requires a reversal. Under all the circumstances of the case before us as disclosed by the record, we have, upon reconsideration, reached the conclusion that the presumption that the trial court did not consider the incompetent testimony has been overcome. Appellant's motion is therefore granted, the judgment of the trial court is reversed, and the cause remanded for another trial.

Motion granted.