## LANGENEGGER v. PURL.
### No. 7841.

Court of Civil Appeals of Texas. Austin.
Feb. 15, 1933.

Rehearing Denied March 8, 1933.

J. F. Taulbee, of Georgetown, for appellant.

Wilcox & Graves, Sam Burnap, and Wood & Wood, all of Georgetown, for appellee.

BAUGH, Justice.

This was a habeas corpus proceeding brought by appellant to secure the possession and custody of Maxine Langenegger, his six year old daughter. From a judgment awarding the custody of said child to Ray Purl, Langenegger has appealed. No findings of fact and conclusions of law were requested, and none filed.

The wives of appellant and appellee were sisters. Appellant and his wife lived on a farm about three miles from the village of Jarrell in Williamson county. They had five children. Appellee and his wife lived in Georgetown. In 1926 the wife of appellant, mother of Maxine, died at the home of Purl and his wife in Georgetown, when Maxine was two months old. After some conversation and negotiations by Purl and his wife with appellant, the latter agreed that appellee and his wife should keep Maxine indefinitely, but declined to give them permission and authority to adopt her. She so remained with appellee and his wife until 1932, was cared for, nurtured, and reared by them, taught that appellant was her father, that her mother was dead, and that appellant's other children were her brothers and sisters, and the families visited each other. During this period appellant contributed $100 to her support and maintenance, which Purl accepted over protest. In February, 1932, Purl's wife died, whereupon this suit was filed. Immediately after the death of Mrs. Purl, Mrs. Wilson, another sister of Maxine's mother and of Mrs. Purl, and her husband, who lived in the same block with Purl at Georgetown, moved into the Purl home. Mrs. Wilson, a mature woman, mother of two girls, and whose character and competency to help care for, rear, and educate Maxine is not questioned, and in whose home Maxine had frequently been sheltered, expressed an affection for the child and a willingness and desire to keep her and assist appellee in rearing and educating the child. Maxine had started to school in Georgetown, and has as her teacher Miss

Mattie Purl, sister of appellee, a competent teacher of long experience, who also had a personal interest in Maxine, and expressed a desire to help see that she was properly cared for and educated. Purl owned his own home, had become affectionately attached to Maxine and she to him, and was shown to be a man of unquestioned reputation, high moral character, and in all respects competent and qualified to afford the child a comfortable home, a Christian environment and training, to rear her in a wholesome atmosphere, and to throw about her proper safeguards of her health, morals, and welfare.

On the other hand, her father owned his own farm, was a thrifty and successful farmer, good to his other four children, whom he had reared since their mother's death. He had not married again. His oldest child, a girl, was at the time of the trial between 14 and 15 years of age, very bright, and in the seventh grade at school. They lived in a small farmhouse, without many conveniences, and walked more than two miles to school. The only maternal care Maxine would have in appellant's home would be that of her fourteen year old sister. No question is raised as to the habits, character, or financial ability of appellant which would disqualify him to have the custody and care of his own child. The evidence was conflicting as to the sanitary conditions at appellant's home, hardships of the children in attending school, and the capacity of the oldest sister, who was already helping to care for three other younger children, to properly care for Maxine in addition.

█ The trial court had before him all the parties, neighbors, and relatives of both Langenegger and Purl, and of Mrs. Purl and Maxine's mother. Many of them testified at length. Numerous witnesses were heard, all of the children were before the court, who had opportunity to observe their demeanor and attitude towards the parties interested and towards each other, to evaluate the ties of affection, and the qualifications of the parties with respect to the proper custody and training of the child in controversy. After a full hearing elicited by able counsel, he concluded that the best interests of the child demanded that her custody be awarded to appellee, who with his wife had reared and cared for her from a helpless infancy of two months to six years of age. As we construe the decisions, we are not authorized to disturb the judgment.

Appellant earnestly insists that the best interests of the child, as a matter of law, will be subserved in awarding it to its father, its natural guardian, and charged by law with the duty to support and maintain it, who is shown to be able and in no way disqualified to discharge that duty; as against an unmarried man, who is not related to it by blood, marriage, or adoption, and under no legal obligation for its support.

█ We confess that appellant's contention and the facts of this case present a strong appeal in his behalf. But the law in such cases now seems well settled. Where a natural parent has willingly surrendered his own child as a helpless infant into the care, keeping, and custody of foster parents, and such parties, in all respects qualified and competent to do so, have reared it for six years, and domestic and affectionate relationships have grown up between such child and its foster parents which it would be injurious to the child to destroy, the district court in the exercise of its equity jurisdiction is authorized to make such award as the best interests of the child demand, even when such award denies the custody to the natural parent. And the fact that one of the foster parents dies does not change such rule. The general presumption of law does obtain that the child's best interests will be subserved by awarding it to the natural parent, but this is a rebuttable presumption, and the ultimate issue in such case is what is best for the welfare of the child. That was a fact issue to be determined within the sound discretion of the trial court upon the evidence before him. And when so determined, unless that discretion be abused, or unless contrary to the great preponderance of the evidence, the appellate court is not authorized to set aside his judgment. White v. Richeson (Tex. Civ. App.) 94 S. W. 202; Joseph v. Puryear (Tex. Civ. App.) 273 S. W. 974; Legate v. Legate, 87 Tex. 248, 28 S. W. 281; Davis v. Sears (Tex. Com. App.) 35 S.W.(2d) 99; Tunnell v. Reeves (Tex. Com. App.) 35 S.W.(2d) 707; Duckworth v. Thompson (Tex. Com. App.) 37 S.W.(2d) 731; Williams v. Perry (Tex. Civ. App.) 40 S.W.(2d) 929; French v. Hux (Tex. Civ. App.) 54 S.W. (2d) 539; Speer's Law of Marital Rights (3d Ed.) § 100, p. 1362.

█ The trial court based his judgment upon his finding recited therein as to what was the best interest of the child under the then existing facts and circumstances. If conditions and circumstances materially change from what they were at the time said judgment was rendered, and the best welfare of the child will be served by so doing, the trial court has the power to change the terms of said judgment or set it aside as conditions may warrant. Hardy v. McCulloch (Tex. Civ. App.) 286 S. W. 629; Jones v. Warren (Tex. Civ. App.) 300 S. W. 146; French v. Hux, supra; Speer's Law of Marital Rights (3d Ed.) § 636, p. 794.

Finding no error, the judgment of the trial court is affirmed.

Affirmed.