THOMAS R. GALLAGHER ET AL. V. THEODORE KELLER.

No. 253.

**Homestead—Intention—Acts Evidencing.**

    Gallagher, head of a family, bought a city lot in 1884. The lot at the time was overgrown with brush. Within ten days he fenced it, and in a short time thereafter he grubbed and cleared it off and planted it in shade trees. He testified, he bought the lot and improved it with intent to occupy it as a homestead. He owned no other real estate. October, 1889, the lot was sold under execution and was bought in at a small price by the plaintiff in execution, and the bid was credited upon it. In 1890 Gallagher erected a house upon the lot and moved upon it, thenceforward residing thereon. He brought suit to remove the cloud from the title, and on the trial of the case he testified, that his intention to make the lot his own had been continuous. *Held*, that where such intention and its continuance are sought to be established in whole or in part by circumstantial evidence, every circumstance tending to show such intent should be considered by the court; and that the facts, that "he built the house and moved into it after the lot was sold under the execution" were competent, and should be considered by the court in determining such intent and its continuation........ 474

QUESTION CERTIFIED from Court of Civil Appeals for Fourth District, in an appeal from Bexar County.

*Upson & Bergstrom,* for appellants, cited Cameron v. Gebhard, 85 Texas, 610; Galligher v. Keller, 23 S. W. Rep., 296.

*Wm. Aubrey,* for appellee.—It was not until after Keller had levied upon the lot that plaintiff's long slumbering intention to build was awakened, and he determined, after obtaining legal advice, to erect his home on the lot with the one thousand dollars on hand, which he should have used to pay off his just indebtedness. As a matter of fact, he did not commence to build until six months after appellee's title had been acquired, and with full notice that his creditor, after waiting nearly six years, during all of which time the lot had remained vacant and unoccupied, and about nine years after the recovery of his judgment, had bought in the property at public sale. Have we not a right, and is it not our duty to presume, that the improvements made in April, 1890, were deliberately made for the purpose of endeavoring to destroy appellee's rights in the premises, and defeat his just demand?

If Gallagher ever entertained the intention of building a homestead on the lot, under the evidence such intention was never expressed in any manner. While his action in fencing the lot and planting shade trees thereupon is, in the language of this court at the former hearing, "not inconsistent with an intention to occupy it as a homestead," it is also not inconsistent with an intention to make the same a beer garden, a hotel, a house to rent for investment, or by improving it to make it better susceptible of sale in its new condition.

DENMAN, ASSOCIATE JUSTICE.—In this cause the following certified question has been propounded to this court by the Court of Civil Appeals of the Fourth Supreme Judicial District:

"On the 31st of July, 1884, Thomas R. Gallagher, being the head of a family, purchased a certain lot in San Antonio, Texas, for $500, and on same day had his deed filed for record in office of county clerk of Bexar County, Texas. At time of purchase he owned no other real property, and has owned none since.

"On October 1, 1889, the lot was sold by the sheriff of Bexar County, by virtue of a pluries execution issued out of the County Court of Harris County, Texas, in favor of Theodore Keller against Thomas R. Gallagher, on a judgment rendered in said court, November 24, 1882, in favor of the former versus the latter, for $534.48, and was bid in by appellee for $50, which sum was credited on the execution, and a deed executed to the purchaser by the sheriff for said lot.

"On March 6, 1890, Gallagher and wife brought this suit to cancel said deed, upon the ground that at the time of the levy and sale of the lot it was their homestead.

"The evidence upon the trial is uncontroverted that the appellant moved from Houston, Texas, to San Antonio, in 1881, at which time he owed about $400, besides the debt included in said judgment. He then owned very little property—the whole of it not exceeding $50 in value. He lived with his family in a rented house, and worked for his brother, receiving as his wages about $75 per month, which continued about ten years, during which time he received no money from any other source. With the money thus earned he purchased the lot in controversy, after which he had about $200 left, which was not enough to build a house on it. The lot when purchased by appellant was covered with chaparral and mesquite brush, and upon it there were no improvements. Within ten days afterwards he put a fence around it, and in a short time thereafter grubbed and cleared it off and planted upon it shade trees, which he testified was done with the intention of putting a house on the lot, as soon as he was able, to live in. He also testified, that he first bought the lot for a homestead, and that he has kept it with that intention continuously ever since; and that he has never abandoned such intention with a view of building a house anywhere else, or of acquiring other property as a home. In 1890 he had saved from his wages about $1000, which he expended in erecting during said year a dwelling house on the lot which cost $1500. He afterwards paid from his wages the difference between the cost of the dwelling and the amount of money he had on hand when he commenced to build. When the house was finished he moved into it with his wife and eight children, four of whom were born after he purchased the lot, and has ever since continued to occupy it as a homestead.

"Can the facts that he built the house and moved into it after the lot was sold under execution be considered, in connection with the other testimony, as evidence tending to establish appellant's intention of making the lot his homestead at the time of its purchase, and of the continuation of such intention from the date of purchase until he actually occupied the premises with his family as a home?"

The form of the question implies that the intention of appellant and its continuation were material facts in issue upon the trial.

In order to establish such facts appellant might resort to direct evidence of such intention and its continuation, such as his own testimony, or to circumstances from which such intention and its continuation might be inferred, such as his relation to and connection with the property, or to both classes of evidence. When such intention and its continuation are sought to be established in whole or in part by such circumstances, each circumstance *in evidence tending* to establish such intention or its continuation, should be considered by the court.

As a matter of law, we are of opinion, that "the facts that he built the house and moved into it after the lot was sold under execution" are circumstances tending in connection with the other facts stated, to establish appellant's intention and its continuation, and should be considered by the court in determining such intention and its continuation.

Delivered February 4, 1895.