TEXAS & P. RY. CO. v. LEWIS.†

(Court of Civil Appeals of Texas. Jan. 12, 1911. On Motion for Rehearing, Feb. 13, 1911.)

1. MASTER AND SERVANT (§§ 206, 217*)—RISKS ASSUMED BY EMPLOYÉ.

An employer is not liable for injuries resulting from dangers incident to the employment, or from dangers of which the employé knows or by using ordinary circumspection could know.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 550, 574–600; Dec. Dig. §§ 206, 217.*]

2. MASTER AND SERVANT (§ 238*)—INJURY TO EMPLOYÉ—NEGLIGENCE.

An employer is not liable for injury to an employé, while unloading a heavy object, by pulling it off a truck, caused by it falling on him after he slipped on a bolt which lay on the floor, where a safer method of unloading was available and the presence of the bolt was easily discoverable.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 743–748; Dec. Dig. § 238.*]

On Motion for Rehearing.

3. MASTER AND SERVANT (§ 235*)—EMPLOYÉ'S RIGHTS—INSPECTION.

Generally, an employé need not inspect the premises on which he works, but he may not ignore obvious dangers or those ordinarily incident to his employment.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 710–722; Dec. Dig. § 235.*]

4. MASTER AND SERVANT (§ 107*)—SAFETY OF PREMISES.

In determining the proper condition of premises, as affecting their safety to employés,

---

the character of the work, situation of the premises, and working conditions should be considered.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 199–202; Dec. Dig. § 107.*]

5. MASTER AND SERVANT (§ 278*)—INJURY TO EMPLOYÉ—NEGLIGENCE — EVIDENCE — SUFFICIENCY.

In an action for injury to an employé while unloading a heavy object by pulling it off a truck, caused by it falling on him, after he slipped on a bolt on the floor, evidence *held* to show that the place was reasonably safe.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954–972; Dec. Dig. § 278.*]

Appeal from District Court, Harrison County; W. C. Buford, Judge.

Action by Georgia Ann Lewis against the Texas & Pacific Railway Company. Judgment for plaintiff, and defendant appeals. Reversed, and judgment rendered.

F. H. Prendergast and W. L. Hall, for appellant. M. B. Parchman and C. E. Carter, for appellee.

HODGES, J. This is the second appeal in this case. The former was by the present appellee, and is reported in 122 S. W. 605. The case was reversed and remanded for errors in the charge of the court, and upon another trial the plaintiff in the suit recovered a judgment against the appellant for damages for negligently causing the death of her husband. From that judgment the railway company now appeals.

The appellee is the widow of Charles Lewis, who was killed while in the employ of the appellant and while working in its repair shops at Marshall, Tex. Lewis, it seems, was the head of a gang of three other employés whose duty it was to bring into the shops engine pilots and material for the carpenters to use in their work of repairing engines. For the purpose of bringing in pilots he was furnished with a two-wheeled vehicle upon which the pilots were loaded and carried into the shops and unloaded at places where they were to be used in replacing old ones taken from the engines. According to the testimony of witnesses who were present at the time Lewis was injured, Lewis and his gang had carried a pilot from the yards into the shop, and when they reached the place where it was to be unloaded the deceased told one of the men to pull it off. This direction not being obeyed, Lewis himself stepped upon the wheel of the vehicle and attempted to pull the pilot over toward him. A second effort was necessary, and when the pilot came over it fell on Lewis, causing the injuries resulting in his death. It appears that, as Lewis stepped back in order to get out of the way of the pilot, he put his foot on an iron bolt an inch in diameter and about 18 inches long, which was lying on the floor at that place. The bolt

rolled, or slipped, and caused Lewis to lose his balance and fall, and the pilot fell on him. It is shown by the testimony that this method of unloading pilots was one which had been used for some time, but appears to have been one which the employés themselves adopted.

The negligence relied on as the basis of the right of recovery was in allowing the bolt on which Lewis slipped to remain on the floor at that place; in other words, in not furnishing a safe place in which to work. We shall not undertake to discuss any of the issues presented on this appeal, except that which relates to the sufficiency of the evidence to show liability on the part of the appellant. It is a well-established rule that the master is not liable for injuries to the servant resulting from such dangers as form a part of the ordinary incidents of the business in which the servant is engaged, or from those of which he knows, or by the exercise of ordinary circumspection could know. The building in which Lewis was employed to work was appellant's repair shop, a place where engines were repaired, where old pilots were taken off and new ones put on. For the purpose of carrying on this work, carpenters and other employés were engaged in performing the various duties necessary in the same building. It was a part of the duty of Lewis and his gang of men to supply these carpenters with the material which they were to use in the prosecution of their work. It is shown that the floor of the shop was made of concrete and was constantly littered with the rubbish and débris which naturally accumulated from the prosecution of that class of work, and that it was the duty of Lewis and his men to remove this rubbish at stated intervals. The testimony shows that Lewis was injured late in the evening on Monday, and that the shop had been cleaned up and all rubbish removed from the floor on the Saturday evening preceding the date of the injury, after work hours. It is also shown that it was common for those cleaning up the premises to find bolts and other things scattered upon the floor, left there by the workmen. It thus appears that the littering of the floor with bolts was one of the ordinary occurrences of which Lewis must have known. There is nothing inherently dangerous in an iron bolt of that size lying upon a concrete floor, or at most the danger, if any, is not so obvious and imminent as to make it the duty of the master to see that it is not permitted to remain there for any length of time. Such an object is easily discovered and avoided if necessary to safety. Nothing in the testimony indicates that any injury would likely have resulted from this bolt's being where it was, except that which did occur. There were three ways in which the deceased and his associates might have unloaded the pi-

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes.

lot: One was by using a crane situated in the building, which would have placed this particular pilot within 12 or 13 feet of where it was wanted; another, by raising the tongue of the truck upon which the pilot was loaded, and by that means dumping it off; and, the third, that which was adopted by Lewis. The last was unquestionably the most dangerous of all, while somewhat more expeditious. But Lewis was not required to use it. It was a method of his own selection. In unloading in this manner, the safety of the servant depended upon his ability to get out of the way of the falling pilot before it struck him. If from any cause he failed serious injury must have been inevitable. No one knows whether Lewis saw the bolt lying on the floor or not; but, conceding that he did not, it is clear that by even a casual glance he could have seen it. He was undertaking a dangerous method of doing his work. To insure his safety the floor must have been clear of all obstacles likely to interfere with his getting out of the way of the pilot. He knew that carpenters were at work, and that the floor was probably incumbered with rubbish. Under these circumstances, it seems that common prudence would have suggested that he make the necessary observations to protect himself against the very danger which he incurred. One of the witnesses testified that in his opinion this bolt was left where it was by the carpenter who took off the old pilot which this one was to replace.

We think the reasoning of the Supreme Court in the case of Railway Co. v. Hynson, 101 Tex. 543, 109 S. W. 929, peculiarly applicable to this case, and upon the principle discussed in that case we think the judgment of the trial court should be reversed, and judgment here rendered in favor of the appellant, and it is, accordingly, done.

### On Motion for Rehearing.

Counsel for appellee insist that the effect of our ruling in this case was to impose upon the deceased servant the duty of inspecting the premises upon which he worked, and they reiterate the proposition that the servant owes no such duty. As a general statement of law that contention is undoubtedly correct; but the law does not mean to say that the servant may shut his eyes to an obvious danger of defect, or that he does not assume the risks ordinarily incident to the known conditions under which he performs his work. In determining what should be the normal or proper condition of premises as affecting their safety, we must take into consideration the character of the work performed, the situation of the premises, and the conditions under which the services would naturally be carried on. Lewis was an experienced employé, and apparently had been in the same service for some time previous to the accident. He must therefore have been familiar with his surroundings and the usual condition of the premises upon which he worked. The place was a shop in which locomotives, and possibly cars, were repaired by taking off broken or defective parts and replacing them with new ones. In doing this service necessarily the workmen would be required to handle bolts used in fastening on parts of the machinery, or in taking off parts, also in handling material that was taken off, and that which was to be put on. From the very nature of this kind of work the floor would become littered, to some extent at least, with bolts and material used by the workmen. To hold the master guilty of negligence because the floor at all times was not kept clear of such articles would be to make the burden, under the facts here in evidence, unreasonable. It is immaterial, so far as the merits of this case are concerned, that the cleaning up was done only once a week. The evidence conclusively shows that this shop had been cleaned up by Lewis and his associates at the close of the last work day preceding that of the accident. That it was habitually cleaned up only once a week would tend to show a fixed custom in that respect with which Lewis must have been familiar, and that the conditions existing on the day of the injury were such as were ordinarily incident to the character of business in which he was engaged. It is not necessary that we hold that Lewis was guilty of contributory negligence, but it is sufficient to say that it is not shown that the appellant had failed to perform its duty to provide him with a reasonably safe place in which to perform his work. The evidence justifies the conclusion that the premises were in such condition as might reasonably be expected from the character of the work there carried on, and such as must have been known to Lewis as their usual condition.

The motion is overruled.