**HARKRIDER–KEITH–COOKE CO. v. SMITH. (No. 7005.)**

(Court of Civil Appeals of Texas. Austin. May 5, 1926.)

1. **Homestead ⊂⊃57(3)—Evidence held to support judgment that property was purchased for homestead purposes and hence was exempt from execution for previously abstracted judgment against purchaser.**

Evidence that unimproved property was purchased with intention of making it a home, that preparations were immediately begun, and home completed within a month and occupied, *held* to support judgment that property was purchased for homestead purposes, and hence was exempt from execution for previously abstracted judgment against purchaser.

2. **Homestead ⊂⊃55—Acquisition of unimproved property with intention to make it homestead, followed by acts evincing intention and subsequent actual use, impresses homestead character from moment of acquisition.**

Where family has no homestead, acquisition of unimproved property with intention to make it homestead, followed within reasonable time by acts evincing intention and subsequent actual use and occupancy as homestead, impresses homestead character upon property from moment of acquisition, and precludes attaching of lien of previously abstracted judgment.

3. **Homestead ⊂⊃57(2) — Evidence of entire transaction relative to purchase of property claimed homestead is admissible.**

In showing homestead character of property to prove it exempt from previously abstracted judgment, evidence showing entire transaction relative to purchase by judgment debtor is proper, even to showing who paid for property and how.

4. **Evidence ⊂⊃314(1).**

Testimony of witness that he paid for property on which homestead exemption was claimed, being transaction within personal knowledge of witness, *held* not objectionable as hearsay.

5. **Appeal and error ⊂⊃1054(1)—Admission of evidence in trial to court, even if incompetent, held not prejudicial, where court would not consider evidence unless later proved to be competent.**

Admission of evidence in trial to court, even if incompetent as being conclusion of witness, *held* not prejudicial, where court's rulings clearly showed that it would not consider such evidence unless subsequent testimony proved it competent.

6. **Homestead ⊂⊃57(3).**

Intention of purchaser of unimproved property to create homestead thereon may be shown by circumstances.

7. **Appeal and error ⊂⊃1054(3).**

Admission of improper evidence in trial to court is not reversible error, where there is sufficient competent evidence to support judgment.

8. **Appeal and error ⊂⊃901—In relying for reversal on incompetent evidence admitted in trial to court, appellant must affirmatively show that trial judge must have been or in all probability was influenced by such evidence.**

Trial court is presumed to have followed law, and burden is upon appellant, relying for reversal on admission of incompetent evidence in trial to court, to affirmatively show that trial judge must have been or in all probability was influenced by such evidence.

Appeal from District Court, Coleman County; J. O. Woodward, Judge.

Suit by Claude W. Smith against the Harkrider-Keith-Cooke Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Dibrell & Snodgrass, of Coleman, for appellant.

W. Marcus Weatherred, of Coleman, for appellee.

McCLENDON, C. J. Suit by Claude W. Smith, appellee, against Harkrider-Keith-Cooke Company, appellant, to restrain sale of S. E. ¼ of block 19, Claws addition to town of Coleman, under execution upon a judgment against Carl Cheaney, and to remove cloud from title. Trial to the court. Judgment for plaintiff for relief sought. Defendant appeals.

The following facts are undisputed: On May 13, 1921, appellant recovered in the justice court of precinct No. 1, Coleman county, a judgment against Cheaney and another for $42 besides interest and costs. An abstract of this judgment was, on January 7, 1922, recorded and indexed in Coleman county, so as to fix a lien on real estate in the county then or thereafter owned by Cheaney. This judgment was kept alive by executions as the law requires.

The property in suit was conveyed to Cheaney by a Mrs. Nowlin by deed of May 8, 1923, for the recited cash consideration of $250. On June 7, 1923, Cheaney gave a deed of trust on the property in favor of Temple Trust Company "to secure the payment of the note therein described, same being a loan made on said date by Temple Trust Company to Carl Cheaney for the purpose of improving the property in question." On December 26, 1923, Cheaney and wife conveyed the property to J. W. Waites, and on December 30, 1923, Waites conveyed it to appellee, Smith. Each of these instruments was recorded on the day of its execution. On April 29, 1925, appellant caused an execution issued under his judgment against Cheaney to be levied upon the property, and the property was advertised to be sold under this levy on the first Tuesday in June, 1925. Appellee brought this suit to enjoin the sale and remove cloud from his title by virtue of the apparent abstract of judgment lien, alleging that the property was the homestead of Cheaney and wife from the time Cheaney acquired it until he conveyed it to Waites.

Appellant's brief contains nine assignments of error. The first three question the sufficiency of the evidence to support the claim of homestead. The next three relate to objections preserved in appellant's bills of exceptions numbered 1, 2, and 3 to certain testimony of Waites. The seventh is not briefed, and the eighth and ninth complain of testimony objection to which is alleged to have been preserved in appellant's bills of exceptions numbered 5 and 6. There are no bills of these numbers. There are three unnumbered bills in the record, but there is nothing to indicate to what bills the assignments refer. For these reasons only the first six assignments can be considered. We will first consider the assignments questioning the sufficiency of the evidence to support the homestead claim.

[1] At the time the property was purchased by Cheaney it was vacant and unimproved, and appellant's contentions, as set forth in its first two propositions, are that the burden of proof was on appellee to show the homestead character of the property at that time in order to defeat the judgment lien, and that this burden was not met since the evidence showed only a subsequent improvement and occupancy of the property by Cheaney. The evidence upon the homestead issue is confined to the testimony of Waites alone. Cheaney was not called as a witness, and the record discloses no reason why he was not called.

We quote the following from Waites' testimony underscoring the portions to which objections were preserved in bill of exceptions 1, 2, and 3:

"I was acquainted with that property on May 8, 1923, the date of the deed from Mrs. Nowlin to Carl Cheaney. There were no improvements whatever, of any kind, on that property at that time—it was just a vacant town lot. I paid the cash consideration for that deed; *I paid for all papers; I paid for all of the transaction of the papers and also for the lot, and for the $250 consideration in the deed.* I paid that $250 cash consideration to Mrs. Nowlin. *It was Carl Cheaney's intention, in buying that property to buy it for a home.* He didn't own any other property in Coleman at that time—if he did anywheres I don't know it. He was living in the house with me here in Coleman. At that time Mr. Cheaney had a wife and one baby.

"As to what I did, if anything, immediately after that deed was executed to Carl Cheaney: Well, I had a lot of material left from the Allen and Scarbrough job, and moved that on the job there and put Carl to work. I moved a house over on that lot just after Carl Cheaney got that deed. I built a five-room building there, and as soon as I got it completed Carl Cheaney and his wife and baby moved into it. Carl Cheaney continued to reside on that property and used it for a home up until the time he sold it back to me, which was on December 26, 1923, as shown by the deed. He was still living in it when I got the deed. He had no other home that I knew anything about, and was using that as his home. After I got that house completed—somewhere about that time, I don't know the date—Carl Cheaney executed a deed of trust to the Temple Trust Company on that property. The deed of trust shows June 7, 1923; I guess that is about right, along there somewhere. The Temple Trust Company didn't advance any money until I actually got the property completed, and after I got it completed the Temple Trust Company took up the deed of trust—in this deed of trust. That was on June 27, 1923, not quite a month after the deed from Mrs. Nowlin. Carl Cheaney was living in the house at the time he sold it to me; he was living in the house at the time the deed was delivered to me.

"I bought the land from Mrs. Nowlin. Carl Cheaney was living in the house with me then. He knew that I was buying it for them for a home. Mr. Cheaney and me talked the mat-

ter over. He just made the remark, him and his wife both, that they would love to have a home, and I bought it for that purpose for them. I told them if they would go on and work for me and save and do their part I would help them to build a home. So this money I paid out on the lot was my own individual money. I let him work that out, and then I let him work out something like $250 more—in fact I borrowed him some. He commenced trying .to save up to get a home, so then we borrowed some from the Temple Trust Company. At the very time he took the deed from Mrs. Nowlin to that property I bought it intending to make him a deed to it, and improvements were put on it for him a home at that particular time."

[2] Under the decisions of this state, where a family has no homestead, the acquisition of unimproved property with the intention of its becoming homestead, followed in a reasonable time by acts evidencing that intention and the subsequent actual use and occupancy of the property as a homestead, impresses the homestead character upon the property from the moment of its acquisition, and precludes the attaching of a lien by reason of a previously abstracted judgment. Cameron v. Gebhard, 85 Tex. 610, 22 S. W. 1033, 34 Am. St. Rep. 832; Freiberg v. Walzem, 85 Tex. 264, 20 S. W. 60, 34 Am. St. Rep. 808; Gallagher v. Keller, 87 Tex. 472, 29 S. W. 647; Dobkins v. Kuykendall, 81 Tex. 180, 16 S. W. 743; Macmanus v. Campbell, 37 Tex. 267; King v. Wright (Tex. Civ. App.) 38 S. W. 530; Wallis v. Wendler, 27 Tex. Civ. App. 235, 65 S. W. 43; Jones v. Lanning (Tex. Civ. App.) 201 S. W. 443.

After a very careful review of the decisions upon this subject, the Supreme Court, speaking through Mr. Associate Justice Brown in the first cited case, say:

"From these decisions it is apparent that intention is almost the only thing that may not be dispensed with in some state of case; and it follows that this intention in good faith to occupy is the prime factor in securing the benefits of the exemption. Preparation—that is, such acts as manifest this intention—is but the corroborating witness to the declaration of intention, the safeguard against fraud, and an assurance of the bona fides of the declared intention of the party.

"If a homestead can not be acquired until it is occupied, then no one can acquire a homestead exempted·from forced sale unless he buys an improved place; and then he must have a race with the sheriff for possession. The unimproved lands of the country and the vacant lots of our cities can not be acquired for the purpose of making a home by the man who is indebted, except at the risk of turning it over to a creditor. If a man owes nothing, or is able to pay all that he owes, he does not need the exemption; if he has other property, he can protect his home by pointing out that other property for sale; but if he has nothing but the homestead, he comes within the necessity of the constitutional provision, and to him is the chief value of exemption."

The evidence above quoted is clearly sufficient to support the trial court's judgment, if in fact it does not conclusively show that the property was purchased for homestead purposes. Preparations were at once begun to place a dwelling house on the property, and this object was consummated before the deed of trust was executed to the Temple Trust Company, at which time only. a month had elapsed since Cheaney acquired the property. The conclusion that the evidence supports the finding that the homestead character attached to the property at the very moment of Cheaney's purchase is too obvious to require discussion.

[3, 4] The objection to the first underscored quotation from Waites' testimony that he paid for the property is that the testimony was immaterial, prejudicial, and hearsay. The contention is overruled. It may not be material· who paid for the property, or whether it was ever paid for. We see no objection, however, to showing the entire transaction relative to the purchase by Cheaney. It was certainly not hearsay, since it detailed a transaction within the personal knowledge of the witness. In what way it was prejudicial to appellant's case we do not perceive. If immaterial, its admission was innocuous, and it may be disregarded altogether without affecting the sufficiency of the proof of appellee's case.

[5] Objection to the testimony reading, "It was Carl Cheaney's intention, in buying that property, to buy it for a home," is preserved in appellant's second and third bills of exceptions. The objections to this testimony were that the answer of the witness was not responsive to the ·question, and that the question called for a conclusion of the witness upon a subject upon which he was not qualified, and for hearsay testimony. The testimony, taken alone, was subject to the objection that it was a conclusion of the witness. In the third bill of exceptions, however, it is shown that when the objection was first made it was sustained, whereupon counsel for appellee promised "to follow it up, showing what he (Waites) knew and everything about it," and upon that promise the objection was overruled. This ruling clearly shows that the trial court was willing to give no probative force to this testimony standing alone. The subsequent testimony of the witness clearly shows that he talked to Cheaney and wife before the property was purchased and knew their intentions in purchasing it.

[6] But, independently of this testimony, the evidence was abundantly sufficient to support the judgment. Even had there been no direct evidence of Cheaney's intention, the circumstances in evidence were sufficient to warrant the inference that he purchased the property for a home. That intention in this regard may be shown by circumstances alone

is expressly held in the Gallagher Case above, from which we quote the following language of Mr. Associate Justice Denman:

"In order to establish such facts [intention at the time of purchase and continuance of such intention thereafter] appellant might resort to direct evidence of such intention and its continuation, such as his own testimony, or to circumstances from which such intention and its continuation might be inferred, such as his relation to and connection with the property, or to both classes of evidence."

[7, 8] When the trial is to the court, the admission of improper evidence, there being sufficient competent evidence to support the judgment, is not reversible error. It is presumed that the trial court followed the law, and the burden is upon appellant to show affirmatively that the trial judge "must have been, or in all probability was, influenced by (the) improper evidence." Lawther v. Winniford (Tex. Com. App.) 249 S. W. 195; Joseph v. Puryear (Tex. Civ. App.) 273 S. W. 974. The action of the court in first excluding the evidence, and afterwards admitting it upon the promise of counsel to show upon what it was based, at least tends to show that the court gave no weight to this part of the testimony.

We deem it proper to note that the statement of facts and briefs of counsel are phenominal for brevity, and therefor to enter record acknowledgment of this court's gratitude.

Finding no reversible error in the trial court's judgment, it is affirmed.