**JOLESCH & CHASKA CO. v. HAMPTON.***
(No. 527.)

Court of Civil Appeals of Texas. Waco.
June 9, 1927.

Rehearing Denied July 5, 1927.

1. **Homestead** ⬳31—**Good-faith intention by party entitled to homestead exemption to occupy property as homestead is sufficient to so impress property, but corroborative evidence of intention must be shown (Const. art. 16, § 51).**

Under Const. art. 16, § 51, good-faith intention by party entitled to homestead exemption to occupy property as homestead is sufficient to so impress such property, but corroborative

evidence of intention, in nature of acts, preparation, or efforts, to so occupy is required.

2. **Appeal and error** ⬳842(1)—**Whether debtor's efforts to acquire actual occupancy of land in connection with intention were sufficient to make it homestead held fact question for trial court.**

Whether efforts of debtor to acquire actual occupancy of land in connection with his avowed intention to occupy it as homestead were sufficient to impress it with homestead character, under all circumstances, *held* fact question for trial court.

3. **Homestead** ⬳57(3)—**Evidence held to sustain judgment that debtor impressed farm land on which he did not reside with homestead character (Const. art. 16, § 51).**

Evidence *held* to sustain judgment that debtor who inherited land from mother, and which was rented to another, had made sufficient effort to acquire actual occupancy of land in connection with his avowed intention to occupy it as homestead to impress it with homestead character, under Const. art. 16, § 51.

4. **Homestead** ⬳181(3)—**To show abandonment of homestead where no new homestead has been acquired, evidence must be clear and conclusive.**

To show abandonment of homestead where no new homestead has been acquired, evidence must show clearly and conclusively that owner has abandoned his homestead with no intention of returning to it.

5. **Homestead** ⬳181(3)—**Evidence held not to show abandonment of farm homestead by moving into city, where no new homestead had been acquired.**

Evidence *held* not to show abandonment of farm homestead by owner's moving into city temporarily to better financial condition, where no new homestead had been acquired.

Appeal from District Court, Ellis County; W. L. Harding, Judge.

Suit by Jolesch & Chaska Company against R. E. Hampton. From the judgment, plaintiff appeals. Affirmed.

Josh H. Groce and J. L. Gammon, both of Waxahachie, for appellant.

J. C. Lumpkins, of Waxahachie, for appellee.

STANFORD, J. Suit by appellant to recover of appellee $1,532.81, and an attachment was issued and levied upon, among other property, 72 acres of land as the property of appellee, R. E. Hampton. Appellee answered, among other defenses, claiming said 72 acres attached was his homestead, and therefore not subject to attachment. The case was tried before the court without a jury, and judgment rendered for appellant for $1,532.81 and a foreclosure of the attachment on certain property, but denying a foreclosure of the attachment lien on the 72 acres, the court holding same was exempt to appellee as

a homestead. The correctness of this holding is the only question involved in this appeal.

Appellants submit two propositions, contending in effect that the court erred (1) in holding under the evidence no lien attached to the 72 acres by the levy of the writ of attachment on same, in that it was the homestead of appellee, because the homestead exemption never attached to the property in question; (2) that if the homestead exemption did ever attach to said property, the same had been abandoned by appellee prior to the levy of the writ. In other words, appellant contends that the evidence was insufficient to show that said 72 acres was ever impressed with the homestead exemption in favor of appellee, and if it was, such right of exemption was lost by appellee by abandonment before the levy of the writ.

As bearing upon the questions here involved, the trial court filed findings of fact and conclusions of law which are in no way questioned by appellant, and which are therefore assumed to be correct, and from which we make the following condensed statement as our findings of fact : Appellee, R. E. Hampton, had a family consisting of wife and five children, and prior to 1925 owned no land. He was a farmer, renting land up to the time of his mother's death. His mother died November 15, 1924, leaving a will in which she bequeathed to appellee the 72 acres of land in controversy, all of which was in cultivation, with improvements thereof consisting of a residence, necessary fencing, etc., and ready for occupancy. Said mother bequeathed to another son, Manton Hampton, a tract of 82.-07 acres adjoining and north of the above-mentioned 72-acre tract, on which was situated her dwelling, etc., on the north side thereof; and on the south side of this 82.07-acre tract was another set of improvements, consisting of a dwelling, barn, etc. Said will provided that this last-mentioned set of improvements should be removed to another 72-acre tract adjoining the east of the first-mentioned 72-acre tract, which was bequeathed to another son, Wade Hampton, on which there were no improvements. This will of Mrs. Hampton was duly probated in January, 1925. On October 15, 1924, before her death, November 15, 1924, the mother of these Hampton boys entered into a written rental contract, by the terms of which she rented to her son, C. N. Hampton, certain lands for the years 1925 and 1926, which lands so rented included a strip of about 10 acres situated on the east side of the 72 acres bequeathed to appellee, and also about 2½ acres on the south side thereof, on which was situated the house, barn, and other improvements belonging to said 72 acres bequeathed to appellee. Said C. N. Hampton went into possession of said 2½-acre tract with the improvements thereon, when said rental contract was executed October 15, 1924. After the death of the mother

November 15, 1924, appellee promptly attempted to take possession of the 72 acres bequeathed to him, and in order to do so requested C. N. Hampton to vacate the 2½ acres and the improvements situated thereon, and also said 10-acre strip, both of which were a part of the 72 acres willed to him, but was informed by C. N. Hampton of the written rental contract under which he claimed the right of possession of both for the next year, 1925, and also 1926, and that he would stand on the contract.

In order to adjust the matter and avoid a lawsuit, a compromise agreement was entered into by appellee and his brother, C. M. Hampton, Manton Hampton and Wade Hampton, two other brothers, also being parties to said agreement, by the terms of which it was agreed, among other things, that C. N. Hampton should retain the 2½-acre tract with all improvements thereon, and that appellee should have possession of all his 72-acre tract so willed to him except the 2½ acres with the improvements thereon, and all of the Manton Hampton 82.07-acre tract, using the Hampton homestead as his residence, and also another house on said 82.-07-acre tract for his tenant. About January 1, 1925, appellee with his family moved into the homestead on the 82.07-acre tract, and his tenant, Boswell, moved into the other house on said 82.07-acre tract, and during said year of 1925 appellee and his tenant farmed all of said 82.07-acre tract and all of appellee's 72-acre tract so bequeathed to him except the 2½ acres thereof with the improvements thereon, which remained in the possession of C. N. Hampton under said new rental contract during the year 1925.

About August 24, 1925, appellee, realizing his crops, on account of continued drouth, were an entire failure, and that he would be unable to live on the farm and feed his teams during the next year, sold his teams and farming implements and at the same time entered into an oral rental contract with Forrest Bros., by which he rented to them his 72-acre tract for one year only, to begin January 1, 1926, but especially reserving from said contract the residence on his said 72-acre tract, with the understanding that they might have it longer than a year if he did not return to the land and work it himself during the year 1927. Appellee thereafter, on September 1, 1925, removed from said land to Dallas, where he leased a residence for a year, where he was living when the writ of attachment was levied. When appellee so removed from said premises on September 1, 1925, he left thereon and in possession thereof his tenant, Boswell, to gather the crops raised thereon during the year 1925. At the time appellee moved to Dallas on September 1, 1925, he had a rental contract with his brother, Manton Hampton, by the terms of which he had rented the 82.07 acres for the year

1926, which contract remained in force until about November 15, 1925, when the defendant had formed the intention of selling his 72-acre tract and investing the proceeds in a new home in Dallas, at which time said rental contract was by mutual consent canceled. Prior to his removal to Dallas, on August 24, 1925, appellee executed a written instrument designating said 72-acre tract as his homestead, which was duly filed and recorded in the proper deed records. Appellee removed from the land he cultivated in 1925 because he had made a failure in his crops that year, and for the purpose of benefiting himself financially, and when he removed to Dallas, he moved into rented premises, his wife keeping roomers and boarders, "and at that time he had no intention of abandoning the 72 acres of land in controversy permanently, but that his intention, openly expressed, was that he would return to the same, unless he succeeded in Dallas, after a year, and possibly before that time." About November 1, 1925, appellee formed the intention of selling the 72 acres and investing the proceeds therefrom in a place in Dallas, which he would make his home thereafter when purchased; that at that time he canceled the rental contract with Manton Hampton in regard to the use of the 82.07-acre tract for the year 1926; also, that about that time he entered into a sale contract with his brother, C. N. Hampton, by which he agreed to sell to him said 72-acre tract for $10,800 cash, and a deed in accordance therewith was drawn, but not executed, because appellee's wife refused to complete the sale until a new place had been found in Dallas and contracted for, which was suitable as a home; that while said contract of sale for the 72-acre tract was pending, appellee found a house and lot in Dallas suitable for a home, and he contracted to buy same for $10,000 cash, with the understanding that the payment of this amount depended upon the sale of said 72-acre tract to obtain the money; that neither of these sale contracts was completed because of the levy of the writ of attachment in this cause.

The trial court found as a conclusion of law, in substance, that no lien by reason of the levy of the attachment existed against said 72 acres of land, because the same, at the time of the levy of said writ, was the homestead of appellee and had never been abandoned as such by him, and that at that time he was within his legal rights in selling the same and investing the proceeds in a new home in Dallas.

[1] Our Constitution, article 16, § 51, as applied here, provides:

"The homestead, not in a town or city, shall consist of not more than two hundred acres of land, which may be in one or more parcels, with the improvements thereon * * * provided, that the same shall be used for the purposes of a home * * * of the head of a family; provided

297 S.W.—18

also, that any temporary renting of the homestead shall not change the character of the same, when no other homestead has been acquired."

A literal application of the language here used would restrict the homestead right to premises actually used for the purposes of a home, except in cases of a temporary renting after the right has once accrued and no other homestead has been acquired. Such a construction of our constitutional provisions would make it almost impossible for the head of a family who might be embarrassed with debt—the one who most needs the homestead protection—to ever acquire a homestead; for it often happens that in the acquisition of property intended for use as a home an unavoidable interval occurs between the acquisition and the actual use or occupancy for such purpose. So, in order to give full effect to this provision of the Constitution and to effectuate the intention in the adoption of said instrument, our courts have wisely adopted the policy of treating this interval, under certain conditions, as a constructive occupancy, and in this way have extended the homestead exemption to times anterior to the period of actual use and occupancy. In doing so, however, our courts have undertaken to prevent this right being used as a means of perpetrating a fraud upon creditors, and in order to do so have required that in each particular case where it is sought to impress the homestead character upon property in advance of its occupancy and use as such, there must be satisfactory evidence of good faith in the homestead intention. The good-faith intention by a party entitled to homestead exemption to occupy property as a homestead is sufficient to so impress such property, but, as no one can know from an expressed intention alone whether it is true or not, our courts require corroborative evidence in the nature of acts, of preparation, or efforts to so occupy, etc., in order to prove such good-faith intention.

[2, 3] In the case of Cameron v. Gebhard, 85 Tex. 610, 22 S. W. 1033, 34 Am. St. Rep. 832, our Supreme Court, by Justice Brown, said:

"From these decisions it is apparent, that intention is almost the only thing that may not be dispensed with in some state of case; and it follows that this intention in good faith to occupy is the prime factor in securing the benefits of the exemption. Preparation—that is, such acts as manifest this intention—is but the corroborating witness to the declaration of intention, the safeguard against fraud, and an assurance of the bona fides of the declared intention of the party. If a homestead cannot be acquired until it is occupied, then no one can acquire a homestead exempted from forced sale unless he buys an improved place; and then he must have a race with the sheriff for possession." Cameron v. Gebhard, supra; Freiberg v. Walzem, 85 Tex. 264, 20 S. W. 60, 34 Am. St. Rep. 808; Gallagher v. Keller, 87 Tex. 472, 29

S. W. 647; Dobkins v. Kuykendall, 81 Tex. 180, 16 S. W. 743; Jones v. Lanning (Tex. Civ. App.) 201 S. W. 443; Harkrider, etc., v. Smith (Tex. Civ. App.) 284 S. W. 614.

That appellee was the head of a family, entitled to homestead exemption, is not questioned. That he acquired the 72 acres in controversy under his mother's will and had no other land, is not questioned. That his mother, about a month before her death, had leased 10 acres of the 72 acres in question, also 2½ acres of same on which was situated the only dwelling house on said land, to C. N. Hampton for the years 1925 and 1926, is not controverted. Appellee, right soon after his mother's death, was preparing to move with his family onto said 72 acres of land, and on learning of said lease tried to get his brother, C. N. Hampton, to turn over to him the dwelling and other improvements so he could move onto said 72 acres, but his brother refused such request and announced he would stand on the contract; whereupon, to settle a controversy with his brother and avoid a lawsuit, a compromise was effected and a new contract entered into, by the terms of which all the 72-acre tract was turned over to appellee, except the 2½ acres containing the house and other improvements belonging to the 72 acres in controversy, and this 2½ acres with said improvements remained in the possession of C. N. Hampton under said new rental contract during the year 1925 only. About January 1, 1925, appellee with his family did move into the house on the 82.07-acre tract adjoining appellee's 72 acres, and appellee's tenant moved into another house on said 82.07 acres, received in lieu of the improvements on said 2½ acres, and appellee, did, during the year 1925, have the possession of and farmed in the usual and customary manner all of his 72-acre tract except said 2½ acres, and his inability to take the actual occupancy of the house on same is fully and satisfactorily explained. As to whether the efforts of appellee to acquire the actual occupancy of said land, in connection with his avowed intention to occupy it as his homestead, were sufficient to impress it with the homestead character, under all the circumstances, was a question of fact for the trial court, and we think the judgment of the trial court resolving said issue in favor of appellee is amply sustained by the evidence, and that said 72-acre tract of land became as effectually impressed with the homestead character from the date he acquired same as if he with his family had actually occupied it. Teller v. Fitch (Tex. Civ. App.) 281 S. W. 893; Harkrider v. Smith (Tex. Civ. App.) 284 S. W. 614; Cameron v. Gebhard, 85 Tex. 610, 22 S. W. 1033, 34 Am. St. Rep. 832; Gardner

v. Douglass, 64 Tex. 76; Evans v. Daniel, 25 Tex. Civ. App. 362, 60 S. W. 1012; Davidson v. Jefferson (Tex. Civ. App.) 68 S. W. 822; Hardin v. Neal, 32 Tex. Civ. App. 335, 74 S. W. 334; Parsons v. McKinney (Tex. Civ. App.) 133 S. W. 1086; Ainsworth v. Dorsey (Tex. Civ. App.) 191 S. W. 595.

[4, 5] As to the character of proof necessary to show that property has lost its homestead character by abandonment before a new one has been acquired, our courts at an early date spoke in no uncertain terms. In the case of Gouhenant v. Cockrell, 20 Tex. 98, Chief Justice Hemphill, speaking for our Supreme Court, said:

"True, a homestead may be disrobed of its guarantees, and the protection lost. The best evidence of this is that a new and permanent one has been acquired. Admitting, however, as we have held, that less evidence may be sufficient, and that where there is abandonment with a fixed intention not to return, the property may be opened to creditors; yet it must be undeniably clear and beyond almost the shadow, at least all reasonable ground of dispute, that there has been a total abandonment with an intention not to return and claim the exemption."

In Cross v. Everts, 28 Tex. 533, Justice Coke of our Supreme Court said:

"If it be admitted that an old homestead may, in opposition to this general rule laid down by Judge Story with regard to the change of domicile, be abandoned before the acquisition of a new one, it can only be on the most clear, conclusive, and undeniable evidence of abandonment of the homestead."

This, with but a few apparent exceptions, seems to be the settled rule of decision in this state. Gouhenant v. Cockrell, 20 Tex. 96; Shepherd v. Cassiday, 20 Tex. 29, 70 Am. Dec. 372; Cross v. Everts, 28 Tex. 525; Scott v. Dyer, 60 Tex. 139; Dunlap et ux. v. English (Tex. Civ. App.) 230 S. W. 829; Sykes v. Speer et al. (Tex. Civ. App.) 112 S. W. 426; Thigpen v. Russell et ux., 55 Tex. Civ. App. 211, 118 S. W. 1080. Appellee in this case acquired no new homestead. His moving to Dallas was satisfactorily explained in that, on account of drouth, his crop was a failure, and he moved to Dallas temporarily to better his financial condition. He had been away from his homestead only about two months at the time it was attached. The evidence not only fails to show clearly and conclusively, as required by the rule in this state where no new homestead has been acquired, that appellee abandoned his homestead with no intention of returning to it, but there is affirmative evidence, uncontroverted, showing the contrary. We think the judgment of the trial court is amply supported by the evidence.

We overrule appellant's assignments and affirm the judgment of the trial court.