**MILLER et al. v. HARMON et al.**
No. 7639.

Court of Civil Appeals of Texas. Austin.
Jan. 20, 1932.

Gibbs & Lewis, of San Angelo, for appellants.

Lloyd Kerr and Louis D. Gayer, both of San Angelo, for appellees.

BLAIR, J.

Appellee D. C. Harmon, hereinafter called plaintiff, sued appellants Mrs. Alice Miller and her husband, E. C. Miller, and appellee W. E. Newton, for $105, alleged to be due for certain labor furnished Newton as general contractor in the erection of a residence for Mrs. Miller. Plaintiff also named as defendants Gilbert Wallace, D. A. Scoggins, and John Brown, hereinafter called interveners, who intervened claiming that the respective sums of $42.50, $54, and $54 were due them for labor furnished Newton in the erection of the residence for Mrs. Miller. And plaintiff and all interveners alleged that they had given notice of and filed their affidavits fixing their respective statutory mechanic's or laborer's liens on December 21, 1929, after the completion of the building on December 13, 1929, which was less than 30 days after completion of the building.

Appellee Newton answered, admitting as general contractor liability to plaintiff and interveners for the amounts claimed by them, and filed a cross-action against Mrs. Miller for an alleged balance of $200 due him on the building contract.

Mrs. Miller and her husband answered that at the time the oral building contract was executed the lot and residence to be erected thereon were intended to be used and are now used as her homestead, and that since the contract was not in writing no lien could attach to the property under the terms of article 5460, R. S. 1925; and that she was not liable for the claims of plaintiff and interveners because she had paid Newton, the general contractor, the full amount of the contract price of the building on December 13, 1929; and that affidavits attempting to fix liens securing the claims in question were not filed for record until December 21, 1929, on which date she first received notice of these claims.

By supplemental pleadings plaintiff and interveners alleged that Mrs. Miller failed to withhold for 30 days after the completion of the contract 10 per cent. of the contract price with which to pay them for their labor furnished to the contractor in building the house as provided by article 5469, R. S. 1925, and that she was therefore liable to them for the amount of their respective claims; and plaintiff and interveners pleaded certain facts and conduct in estoppel of the right of Mrs. Miller to assert that the property was her homestead.

A trial to the court without a jury resulted in judgments in favor of plaintiff and interveners for the amount of their respective

claims against W. E. Newton and Mrs. Miller, jointly and severally, and for foreclosure of their respective statutory liens on the property involved. W. E. Newton was denied judgment on his cross-action against Mrs. Miller, and no appeal was taken from this judgment. Appellants, Mrs. Miller and husband, have appealed from the judgments in favor of plaintiff and interveners.

With respect to the judgment in favor of plaintiff Harmon, appellants contend (a) that he pleaded and filed his affidavit attempting to fix his lien for labor performed as a subcontractor under Newton, and that he gave notice of his claim to Mrs. Miller for labor performed as subcontractor under Newton, but that the undisputed evidence showed that he was not a subcontractor under Newton, but performed the labor for J. B. Robertson; and (b) that since he alleged that he was a subcontractor he could not recover as a mechanic or artisan under the terms of article 5469, R. S. 1925.

Harmon alleged "that as such general contractor the defendant W. E. Newton contracted and agreed with plaintiff as sub-contractor to perform certain labor on said building at an agreed price of One Hundred Five ($105.00) Dollars." Appellants did not object to the pleadings of plaintiff in any manner. Plaintiff's affidavit fixing his lien stated that "the said D. C. Harmon, at a contract price of One Hundred Five ($105.00) Dollars agreed to perform the carpenter work and labor and did in fact perform certain carpenter labor according to said contract on the hereinafter described premises for an agreed price of One Hundred Five ($105.00) Dollars." To this affidavit was attached an itemized account of the labor performed, and the affidavit further stated that demand was made upon Newton to pay the account on December 5, 1929, after the work had been done, and that he failed or refused to pay it; and further stated that the labor was performed for Newton in erecting the building for Mrs. Miller upon her property therein described. Mrs. Miller was presented a copy of this affidavit and attached itemized account on December 21, 1929. As to his connection with the building contract, plaintiff Harmon testified as follows: "The way I went to work on that house was in connection with a partnership contract with Mr. Robertson in which he and I were to do certain work on the house. I made my trade with Mr. Robertson. I quit a few days before the work on the house was finished, with the agreement that Robertson was to finish it up. He was to pay me $5.00 a day for my services and that amounted to $105.00; Robertson was to pay me that. I went home and that was all the further connection I had with it. This $105.00 that Robertson was to pay me was for 21 days work at $5.00 a day. * * * During that time Mr. Newton was not paying me any sums of money. He did not pay me any

sum of money on the contract between him on the one hand and Robertson on the other. I am still looking to Robertson for that $105.00."

■ J. B. Robertson, who was Mrs. Miller's brother, and who was shown to have aided her throughout the building transaction, testified that, "Mr. Newton had the general contract and I sub-contracted the carpenter work under him." Robertson was paid $125 for his own carpenter work in the final settlement between himself, Newton, and Mrs. Miller. He made no mention of any agreement between himself and plaintiff Harmon; but stated that Harmon told him that Newton paid him $50 in connection with the contract. Newton answered in this suit that he owed plaintiff Harmon the $105 claimed by him for labor furnished in the erection of the residence for Mrs. Miller. Harmon demanded pay from Newton for the labor, notified Mrs. Miller that Newton owed him for the labor, filed his affidavit that Newton owed him for the labor in the sum of $105, representing 21 days' work at $5 per day as a carpenter, and brought this suit against Newton for the labor performed. He testified that he was also looking to Robertson for his pay, but upon what agreement as between them he did not state. There was no dispute between Robertson and Newton as to who should pay Harmon, but Newton in all his dealings with Robertson assumed payment of Harmon's labor as a primary obligation. Newton testified that he was engaged in the lumber business and as a general contractor, and that he authorized Robertson to employ parties to help carry out his contract with Mrs. Miller, and while he did not testify specifically that he authorized Robertson to employ Harmon, the trial court could have reasonably concluded, from the fact that Newton at all times assumed the payment of Harmon's wages, that Newton did authorize Harmon's employment and was primarily liable for his labor. We therefore do not sustain the contention of appellants that plaintiff Harmon performed the carpenter labor for Robertson.

■ Nor do we sustain the contention that plaintiff Harmon was a subcontractor under Newton under his pleadings and proof. He did allege the general conclusion that he was a subcontractor under Newton, but he alleged no facts upon which to base the conclusion; and further alleged that "he performed certain labor on the building" for an agreed price with Newton. His proof showed that he performed the labor of a carpenter for 21 days at an agreed price or wage of $5 per day. These facts would not constitute him a subcontractor but a day laborer for an agreed wage per day, and the fact that he alleged a general conclusion that he was a subcontractor may be disregarded as surplusage. Therefore, the contention of appellant that a subcontractor is not entitled to the benefit of

article 5469, R. S. 1925, requiring the owner of the house to withhold for 30 days after completion of the house 10 per cent. of the contract price with which to pay mechanics and artisans who perform labor for the contractor or subcontractor, is not material. Nor is the case of Huffman v. McDonald (Tex. Civ. App.) 261 S. W. 146, relied upon by appellants as sustaining them in this contention, in point on facts. There a subcontractor, who did not himself perform the labor but employed others to perform it, and for which labor only the subcontractor was primarily liable, sought to establish his lien as subcontractor under article 5469, and it was held that the article was only for the benefit of "any mechanic or artisan" who performs "any labor or service for any contractor, subcontractor," etc. In the instant case the plaintiff was not a subcontractor, but merely a mechanic or artisan, who in person performed the labor for the contractor who was primarily liable for the labor.

By several propositions appellants complain that the trial court erred in finding that plaintiff Harmon and intervener Scoggins were carpenters, that intervener John Brown was a floor finisher, and that intervener Gilbert Wallace was a painter, and that each of them performed the labor indicated by their respective professions for Newton in building the residence for Mrs. Miller, because, first, each of them plead and filed affidavits simply stating that they had "performed labor" for Newton; and, second, that a laborer is not a mechanic or artisan within the terms of article 5469. Appellants made no objection to the pleadings of plaintiff and interveners as not alleging specifically the character of labor each of them performed. Folschinsky v. Rocha (Tex. Civ. App.) 41 S.W.(2d) 333. To their respective affidavits filed for the purpose of fixing their mechanic's or laborer's liens were attached itemized accounts of their claims for their labor. These itemized accounts do not appear in the statement of facts; but in the statement of facts it is stated that "without itemizing the respective bills attached to the foregoing affidavit, the total amount of such bills are shown as follows." Since appellants did not include the itemized accounts in the statement of facts, it will be presumed that they support the findings of the trial court as to the character of work performed by plaintiff and interveners. Newton testified that Harmon and Scoggins were carpenters; that Brown was a floor finisher; and that plaintiff and each intervener performed the labor sued for in the erection of the building. We therefore do not sustain the first contention of appellants. The second contention is not sustained because carpenters, painters, and floor finishers are mechanics or artisans within the meaning of article 5469.

The terms "mechanics, artisans and materialmen," and the provisions of the constitution for fixing their liens for labor performed or material furnished, were construed in the case of Bassett v. Mills, 89 Tex. 162, 34 S. W. 93, to be, with respect to giving the liens, "as broad as language can make" them. The terms "mechanics and artisans" are used in exactly the same sense in article 5469, supra, and plainly give carpenters, painters, and floor finishers who comply with the terms of article 5453, as to the manner of fixing their liens the right of recovery against the owner failing to withhold the 10 per cent. for 30 days under the provisions of said article 5469.

Passing to a consideration of the homestead question, the trial court held that Mrs. Miller was estopped to assert the property to be her homestead, because of the following facts and conduct on her part: Mrs. Miller was a widow by the name of Mrs. Alice Markham when she made the contract. She and her two small children lived with her father in Coke county, Tex., at the time, and where she had lived all her life. She bought the lot, located in Tom Green county, Tex., in April, 1929. The oral contract for the building was made in October, 1929. Her brother, J. B. Robertson, who assisted her in making the contract and did some of the carpenter work for Newton, told Newton in the presence of Mrs. Markham that she was building the house so as to be able to sell the lot to a better advantage. That the lot was a vacant, unimproved lot, but that if a house was built thereon it could be sold to advantage. Newton, plaintiff, and all interveners lived in Coke county and knew Mrs. Markham and that she lived in Coke county. Mrs. Markham married appellant Miller December 12, 1929, and on the following day, December 13, 1929, settled with Newton in full for his contract, and moved into the residence and they have since used it as their homestead. Neither Newton nor plaintiff, nor interveners, knew that she intended to use the premises as her homestead until she moved into it after settling with Newton, and after the completion of the building.

The general rule seems to be, in cases of this character, that the time of making of the building contract is the true criterion on the question of whether the property is homestead, and no subsequent act of the owner will affect or change property from nonhomestead to homestead after the execution of the contract so as to defeat liens of mechanics, laborers, or materialmen furnishing labor or material in the construction of the building. If Mrs. Miller knew at the time she made the contract with Newton to build the house that she intended to use it as a homestead, she never revealed that fact, and permitted her brother to represent that the house was being constructed for the purpose of selling the vacant unimproved lot to a better advantage. Those facts and the conduct of Mrs.

Miller estop her from asserting that she intended to use the property as her homestead after the building was completed.

On principle the following authorities cited by appellees support our holding: Collier v. Betterton, 8 Tex. Civ, App. 479, 29 S. W. 490; Franklin v. Coffee, 18 Tex. 417, 70 Am. Dec. 292; Swope v. Stantzenberger, 59 Tex. 387; Cameron v. Gebhard, 85 Tex. 610, 22 S. W. 1033, 34 Am. St. Rep. 832; Harkrider-Keith-Cooke Co. v. Smith (Tex. Civ. App.) 284 S. W. 612; Jolesch & Chaska Co. v. Hampton (Tex. Civ. App.) 297 S. W. 271; Espinoza et ux. v. Cocke (Tex. Com. App.) 276 S. W. 1095.

■ Our above holdings would require an affirmance of the judgment of the trial court but for our conclusion that article 5469 only authorizes mechanics and artisans to recover 10 per cent. of the contract price of the house, building, etc., and no more, from any owner failing to comply with the provisions of the statute. The statute reads as follows: "Whenever any mechanic or artisan shall perform any labor or service for any contractor, sub-contractor, agent or receiver, in the erection or repair of any house, building, fixture or improvement, or as a necessary incident in connection with such work of construction or repair, such owner, agent or receiver shall retain in his hands during the progress of such work and for thirty days after the completion thereof, to secure the payment of said artisans and mechanics, ten per cent of the contract price of such building, fixture or improvement, or the repair thereof, or ten per cent. of the value of such building, fixture or improvement, or the repair thereof, measured by the proportion that the work done bears to the work to be done thereon, and using the contract price or the reasonable value of the completed building, fixture or improvement, or the repair thereof, as a basis of computation of value. All mechanics or artisans who may file a mechanic's lien upon said building, fixture or improvement so made or erected or repaired in accordance with the law applying thereto, shall have ratably among themselves, a preference lien upon said fund so retained in the hands of such owner, or agent, or receiver. If such owner, receiver or agent refuses or fails to comply with the provisions of this law, the mechanics and artisans performing work thereon and in connection therewith, who may file liens thereon in accordance with law, shall have ratably among themselves preference liens, to be preferred above all other liens and claims whatsoever upon such house, building, structure, fixture, or improvement, and all its properties, and on the lot or lots of land necessarily connected therewith to secure payment for such labor thereon."

Manifestly, the statute only provides for a fund of 10 per cent. of the contract price, and specifically provides that mechanics and artisans "shall have ratably among themselves, a preference lien upon said fund so retained in the hands of such owner"; and further that if the owner failed to retain 10 per cent. of the funds as directed by the statute, then mechanics and artisans "shall have ratably among themselves preference liens * * * upon such house, building, * ' * * to secure payment for such labor thereon." From this language we think it clear that the Legislature did not intend to penalize an owner more than 10 per cent. of the contract price of the building for failure to comply with the provisions of this statute.

The contract price of the building in question was $1,400, the extras were $59.85, or a total price of $1,459.85, 10 per cent. of which is $145.98. We therefore reform the judgments so as to authorize plaintiff and interveners to recover of and from Mrs. Miller the sum of $145.98, with legal interest as prayed, to be prorated in accordance with the amounts of their respective claims; and that plaintiff and interveners shall have ratably among themselves a preference lien upon the property here involved to secure payment of their respective judgments, and for foreclosure of said liens; and as thus reformed the judgments of the trial court herein will be affirmed.

Reformed and affirmed.