## ESPINOZA et ux. v. COCKE.
### (No. 725–4316.)

(Commission of Appeals of Texas, Section A. Nov. 18, 1925.)

**1. Homestead ☞33—Definite intention in good faith to occupy vacant property as homestead, accompanied by preparatory acts showing such intention, creates homestead rights.**

Homestead right exists in vacant property where there is definite intention in good faith to occupy such property as homestead by the head of family owning no other home, and such intention is accompanied by preparatory acts in connection with the property definitely tending of themselves to show such intention.

**2. Homestead ☞33—Declared intention of laborer to occupy lots as homestead, coupled with preparatory acts, sufficient to impress property with homestead character.**

Where laborer, having no other home, expressly declared his intention to occupy vacant lots owned by him as homestead, and preparatory thereto was paying off paving lien in order that he might successfully negotiate for the building of a house thereon, and had levelled off and cleared lots, *held*, that lots were thereby impressed with homestead character.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Suit by M. G. Espinoza and wife against Emmett B. Cocke. From a judgment of the Court of Civil Appeals, reversing a judgment of the trial court for plaintiffs, plaintiffs bring error. Judgment of Court of Civil Appeals reversed, and judgment of trial court affirmed.

Davis & Wright, of San Antonio, for plaintiffs in error.

Templeton, Brooks, Napier & Brown, Ben H. Kelly, and Emmett B. Cocke, all of San Antonio, for defendant in error.

HARVEY, P. J. M. G. Espinoza bought a second-hand automobile on credit. On March 14, 1919, a judgment was rendered by a justice court of Bexar county against Espinoza for the sum of $181.50, being unpaid balance due for the automobile. On August 18, 1920, an alias execution was issued on the judgment which was levied by the constable on certain city lots in the city of San Antonio; same being the lots in controversy. On October 5, 1920, the constable, after advertising the sale, sold the lots at public auction, under said alias execution, to defendant in error, Emmett B. Cocke, for the sum of $100. At such sale the constable executed his deed to Cocke conveying him the lots in controversy. The present suit was thereafter brought by said Espinoza and his wife against Cocke for the recovery of said lots.

Among other grounds for recovery herein, Espinoza and wife allege that at the time of such levy and sale the said lots constituted their homestead. Upon the trial of the case in the court below the jury found, among other things: (1) That the reasonable value of said lots on October 5, 1920, was $1,500; (2) that M. G. Espinoza formed an intention prior to the date of the levy of said alias execution and sale thereunder of using and occupying the said lots as a homestead for himself and family; and (3) that such intention of Espinoza to use and occupy said lots as a homestead for himself and family existed at the time of such levy and sale.

The evidence discloses that M. G. Espinoza is a Mexican, and is employed by the city of San Antonio as a street cleaner. He is about 65 years of age, and his family consists of his wife and four minor children, three of whom are girls, and the youngest and fourth a boy, about 8 or 9 years old. His family has been so composed since prior to the year 1918. He owns no other real estate than the above-mentioned lots, and has owned no other real estate since the year 1918.

During the middle or latter part of the year 1918 Espinoza was residing with his family in a small dwelling house in another part of the city, which he was buying on the installment plan. At about that time he became unable to keep up the payments on the last mentioned place, and he was compelled to surrender same to the vendors. He and his family thereupon moved into another house, which he rented. He had previously bought the lots involved in this suit and paid $416 for them.

At the time he surrendered the dwelling which he had been occupying under contract of purchase, as above stated, Espinoza formed the purpose and intention of erecting a house and other improvements on the lots in controversy, same to be used by himself and family as a home. The lots in controversy were vacant at that time. In pursuance of such purpose he proceeded to fill in and level off said lots, and to inclose same by a fence consisting of posts and one string of plank. He also cleared the lots of bushes and vegetation. Thereupon he applied to a lumber company to build for him a dwelling on the property to be occupied by himself and family as a home. His purpose was to give the builders a lien on the property and the improvements to be placed thereon for the purpose of securing the payment of the cost of such improvements. But, it having been discovered that a paving lien existed against said lots in favor of the city of which Espinoza was ignorant at the time he bought said lots, the lumber company refused to make such improvements for him on credit until such paving indebtedness was paid off. He also sought to effect a similar arrangement with other builders during the

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

next two years, but, on account of the existence of such paving lien on the lots, was unable to procure his dwelling to be built on credit. He had no means other than his wages, and his purpose was to pay for such improvements on the installment plan from his wages as they accrued.

During all this time his earnings were meager, and scarcely sufficed to care for his family and keep his children at school. Yet, having learned of such paving lien, and that it was necessary to pay off same before any builder would build his home for him on credit, he diligently proceeded to make payments on such paving indebtedness from time to time, until by the date of said execution sale he had paid thereon the aggregate sum of $305.22, leaving a balance then due of $306. Being ignorant of the fact that such execution sale had taken place, Espinoza continued thereafter to make payments on such paving lien up to October, 1921; such payments so made by Espinoza after the said execution sale aggregating the sum of $195.

At all times, from the year 1918 to the time of the said execution sale on October 5, 1920, Espinoza held to and maintained his purpose and intention, in good faith, to have a dwelling house and improvements built on the lots to be occupied by himself and family as a home as soon as he succeeded in paying off such paving lien indebtedness. During such period of time he openly and repeatedly declared his said intention to divers persons, including lumber companies, carpenters, and contractors. Being unable, for lack of means, to pay cash for the humble dwelling house and improvements which he desired to have built upon the lots (which lots were all the real estate owned or claimed by him during such period), it was necessary for him to pay off the paving lien indebtedness before he could have such contemplated dwelling and improvements built on credit, to be paid for in installments from his earnings as they accrued.

Espinoza, as soon as he paid off such paving indebtedness as he contemplated doing and was doing, could have made suitable contract with builders to erect his dwelling house for him on credit, as he desired, and he would have made such a contract as soon as he finished paying such paving indebtedness. Such paving indebtedness was gradually and continually being reduced, during this period, by payments made by Espinoza from time to time, as his meager earnings and the necessities of his family permitted. During all this period Espinoza and his children cared for said lots and kept same free of vegetation, and kept them in suitable condition for building thereon as soon as Espinoza finished paying off the paving indebtedness. We have given above a rough outline of the facts relating to the homestead question as shown by the evidence.

[1] A definite intention, in good faith, to occupy vacant property as a homestead by the head of a family who owns no other home is of controlling force when such intention is accompanied by preparatory acts in connection with the property definitely tending of themselves to show such intention and the good faith and reality thereof. Dobkins v. Kuykendall, 81 Tex. 183, 16 S. W. 743; Cameron v. Gebhard, 85 Tex. 610, 22 S. W. 1033, 34 Am. St. Rep. 832.

[2] Various acts of preparation to build a home on vacant property have been held sufficient, in connection with the declared intention to use the property as a home, to impress the property with the homestead character so as to bring it within the constitutional exemption. The precise extent or nature of such acts of preparation is not clearly defined, but we think that the facts of this case show a bona fide intention on the part of Espinoza and sufficient acts of preparation to make this property a home; and that this old Mexican and his family have an existing homestead right in the lots in question, which the Constitution shields from the encroachment of creditors.

The property being the homestead of Espinoza and his family at the time of the levy of the execution herein and the sale thereunder, it follows that such sale is void.

We also are of opinion that the irregularities in the processes upon which such sale was based, in connection with the inadequate consideration for which the property was sold, are such as to render the sale invalid, but we shall not point out such irregularities or discuss them.

We recommend that the judgment of the Court of Civil Appeals herein be reversed and that the judgment of the trial court be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.