## L. E. WHITHAM & CO. et al. v. BRIGGS.
### No. 12466.

Court of Civil Appeals of Texas. Fort Worth.
June 6, 1931.

Rehearing Denied July 11, 1931.

Milburn E. Nutt and Dawson & Holliday, all of Wichita Falls, for appellant.

Mathis & Caldwell, of Wichita Falls, for appellee.

DUNKLIN, J.

This is an appeal by L. E. Whitham & Co., defendant, from a judgment in favor of Mrs. Nora Briggs, canceling a purported improvement lien claimed by L. E. Whitham & Co. in its cross-action against lots 1 and 2, in block 88A of Highland Park addition to the city of Wichita Falls, owned by Mrs. Briggs, who instituted the suit to clear her title from the cloud arising from that claim.

The record shows that the defendant L. E. Whitham & Co. did certain improvements on the street on which the two lots abutted, under and in full compliance with a contract with the city council of the city of Wichita Falls, who passed the ordinance necessary to fix a lien on the abutting property, and which had the effect to create a lien on the lots in controversy, unless the same was defeated by the homestead exemption pleaded by Mrs. Briggs.

The cross-action of L. E. Whitham & Co. was upon a paving certificate issued by the city council which recites that a special as-

sessment of a lien for cost of the improvement on the lots in controversy was made on August 30, 1926, and that the work was duly finished according to plaintiff's contract therefor. The uncontroverted evidence showed that Mrs. Briggs purchased the lots while they were vacant for the purpose of improving and occupying them as a homestead, and built a residence thereon during the latter part of 1918, in which she has lived as her home ever since. Some six weeks prior to the building of the house she placed a tent on the lots and occupied that as her place of residence until the house was finished. Her deed to the lots was dated February 13, 1918, and that was executed in consummation of a contract of purchase and sale, on the monthly installment plan, dated some time during the year 1914. That contract of purchase was made by her after she had been divorced from her second husband, Moore. Her first husband was named Briggs, who died prior to her marriage to Moore. No children were born to her marriage with Moore, but two children were born to her marriage with Briggs. James, the eldest, died, but Elmer, the second son, is still living. He was born in Oklahoma, February 14, 1894. At the time Mrs. Briggs contracted for the lot in the year 1914, Elmer was living with her in the city of Gainesville, and was then less than 21 years of age and unmarried. She bought the lots for no other purpose except for a home for herself and Elmer. Her contract of purchase of the lots was on the partial payment plan, the first installment being paid at the time the contract was executed. By reason of her poverty and illness a portion of the time, she was unable to finish the payments and also meet taxes until February 13, 1918, when she acquired a deed to the property, but during that time she met those payments as best she could from rentals of rooms in a house she had leased as a dwelling place until she could build a house on the lots in controversy; and throughout that period she had a definite fixed intention to make the property her home, and openly and publicly announced that intention to her friends and acquaintances. Her son, Elmer, continued to live with her as one of her family and to assist in defraying their household expenses out of his earnings until the year 1917, when he enlisted as a soldier in the World War and continued in that service for nearly two years. During his service his mother would send him money from time to time and after his return he lived with her for some three years when he married, and established his home in another town. As soon as she got her deed to the lots, she built a residence thereon with money borrowed on a mechanics' lien placed on the premises and has lived in that house, claiming it as her homestead, ever since. About six weeks before the house was built she placed a tent on the lots and lived in it until the house was finished.

Mrs. Briggs testified to the facts already recited, and further testified in part as follows:

"Before I moved on the lots in the tent, I had set out some trees and a few things like that on the lots—you know the lots were just out there on the prairie."

Other witnesses were introduced whose testimony corroborated that of Mrs. Briggs with respect to her asserted claim of homestead in the lots for a number of years prior to the time she moved into the tent; and one of those witnesses was Loraine Tucker, who, while a small child, occupied the tent with Mrs. Briggs during Elmer's service in the army. When the street was paved Mrs. Briggs was occupying and claiming the property as her home, as she had done some six or seven years prior thereto, and before the ordinance was passed to improve the street one of the city's agents requested her to sign a petition therefor, but she refused to do so because of her inability to pay the assessment.

Appellant insists that although the son Elmer was a minor at the time the contract of purchase was entered into, and that, therefore, it may be said that Mrs. Briggs was then the head of a family, yet her mere intention to make the lots her homestead, coupled with her subsequent payments therefor, but without improvements until some four years later, was not sufficient to impress the lots with the homestead character; and that when the improvements were begun Mrs. Briggs was not then the head of a family, and therefore not protected by the constitutional homestead exemption.

 We do not concur in that contention. It cannot be denied that the constitutional provisions exempting the homestead were designed for the protection of such persons as may be situated as was Mrs. Briggs. Indeed, her financial condition and her necessities appeal with special force for their application in her favor. In her straightened circumstances, her advanced age, ill health, and with no husband on whom she could lean for support, she certainly needed a home where she could pass the remaining years of her life free from molestation by creditors; and the opinions of our Supreme Court abound with repeated announcements that the exemption laws of our state will be liberally construed to accomplish the beneficent purpose for which they were intended. And in accord with that rule of construction, it is now well settled by our decisions that the homestead character will attach to vacant property that is purchased for use as a homestead and with a fixed intention to so use it, provided that the intention so formed is followed within a reasonable time by some character of work

done or preparation made on the property which is sufficient to give notice that such intention will be later consummated by further improvements and occupancy of the property as a homestead. Just how soon such preliminary work or preparations shall occur depends upon the facts and circumstances in each instance. As indicated by the decisions, the purpose of requiring some preparatory work or improvement to be done is to give notice to others who might assert adverse claims against the property, arising prior to the beginning of improvements thereon. However, the appellant here occupies no such position. The city attempted to fix the paving assessment lien without the consent of Mrs. Briggs, over her objection thereto, while she was occupying and claiming the property as a home and some seven years after the house had been finished. Therefore, we conclude that the evidence was sufficient to show that the improvements made on the property were made within a reasonable time after Mrs. Briggs contracted to purchase the property, considering her ill health, financial circumstances, and needs; that she was the head of a family at the time she acquired that contract; that she contracted to purchase it with a definite fixed intention to use it as her homestead; and that, when the improvements were made, they should be held to relate back to the date of the initial purchase, and that the property was impressed with the homestead character as of that date, as against plaintiff's alleged lien.

While we have been cited to no decision directly in point, we believe the following, among others which might be cited, are in accord with our conclusions: Espinoza v. Cocke (Tex. Com. App.) 276 S. W. 1095, 1096; Teller v. Fitch (Tex. Civ. App.) 281 S. W. 893; Jolesch & Chaska Co. v. Hampton (Tex. Civ. App.) 297 S. W. 271; Blum v. Gaines, 57 Tex. 119; Woods v. Alvarado State Bank, 118 Tex. 586, 19 S.W.(2d) 35.

We quote the following from the opinion of the Commission of Appeals, in Espinoza v. Cocke, supra:

"A definite intention, in good faith, to occupy vacant property as a homestead by the head of a family who owns no other home is of controlling force when such intention is accompanied by preparatory acts in connection with the property definitely tending of themselves to show such intention and the good faith and reality thereof. Dobkins v. Kuykendall, 81 Tex. 183, 16 S. W. 743; Cameron v. Gebhard, 85 Tex. 610, 22 S. W. 1033, 34 Am. St. Rep. 832."

And the following is quoted from the syllabus of Blum v. Gaines, supra, and which was followed in Woods v. Alvarado State Bank, supra:

"When a homestead has been once acquired, the subsequent death, marriage or removal of all the individuals who composed the family, except the surviving husband, does not subject the homestead to forced sale under a judgment against him, he still occupying it as a home."

Accordingly, all assignments of error are overruled, and the judgment of the trial court is affirmed.

BUCK, J. (dissenting).

While my sympathies are aroused on behalf of the appellee, yet I do not think that the case ought to be decided on sympathy. As I understand the record, Mrs. Briggs contracted to buy this property in the year 1914, at which time the only other constituent member of her family was a son then about twenty years, six months, old. She made no effort to improve the property until after her son had become of age. I agree with the appellant in their contention that the mere intention to make the lots her homestead did not constitute the lots her homestead unless such intentions were coupled with some act of improvement of the lots, within the time when Mrs. Briggs was entitled to purchase a homestead, with the homestead exemption. When the improvements were begun, Mrs. Briggs was not then the head of the family, as her only son was of age. Therefore, I do not believe that Mrs. Briggs ever purchased a homestead, impressed with the homestead exemptions, while she was the head of the family.

I think the judgment should be reversed, and the cause remanded, or reversed, and the judgment rendered for appellant.